THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. NANCY JONES, Defendant-Appellant.

First District (4th Division)   No. 1—00—3941

Opinion filed September 30, 2002.

Rita A. Fry, Public Defender, of Chicago (Richard Dvorak, Assistant Public Defender, of counsel), for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb and Hareena Meghani-Wakely, Assistant State's Attorneys, of counsel), for the People.

PRESIDING JUSTICE THEIS delivered the opinion of the court:

Following a bench trial, defendant Nancy Jones was convicted of telephone harassment and sentenced to two years' conditional discharge with a mental health examination. She was also ordered not to have any unlawful contact with her former attorney, Stuart Alpren. On appeal, defendant contends that she was not proven guilty beyond a reasonable doubt because the State failed to prove that she made the telephone call for the specific purpose of making a threat. For the following reasons, we affirm the judgment of the circuit court.

At trial, Stuart Alpren testified that he was an attorney with the City of Chicago's department of consumer services. He prosecuted a civil case against a motor vehicle repair shop on defendant's behalf. Alpren's first meeting with defendant was on March 27, 2000, but he had contact with her by telephone approximately two or three times between November 1999 and April 2000. He stated that as the case went on, defendant became "combative" and wondered why the case was taking so long to resolve. According to Alpren, defendant had accused him of not making his best efforts to get her money back. At the trial on April 3, 2000, a judgment was entered in defendant's favor for $325. On the morning of April 19, 2000, Alpren was working when he was notified that defendant had made a telephone threat to his supervisor, Gloria McGowan, threatening to kill him. He then went to city hall, where defendant had been arrested, and signed a criminal complaint against her. On cross-examination, Alpren stated that

defendant seemed to be confused, frustrated, upset and aggravated whenever they talked because the matter was taking so long to resolve. He also stated that defendant had never threatened him previously. Alpren had not talked to defendant on the day she was arrested and saw her for the first time when he arrived at city hall.

Gloria McGowan testified that she was a supervisor in the department of consumer affairs. She had spoken to defendant several times in reference to defendant's consumer case against a motor vehicle repair shop. At approximately 9:30 a.m. on April 19, 2000, McGowan was in her office when she received a telephone call from defendant. Defendant had first contacted McGowan in February to complain about Alpren's handling of her case. McGowan stated that she had spoken to defendant five to six times by telephone prior to April 19. On that date, defendant was very upset and said that Alpren had given her the wrong telephone number. McGowan stated that she unsuccessfully tried to calm defendant. Defendant told her that Alpren was giving her the "run around because he was a white man and white people are always against us." Defendant then stated that she was not getting her money back for her vehicle, and when McGowan attempted to explain the process, defendant said that she did not want to hear what McGowan had to say. McGowan then stated that defendant said the following: "I'm just sick of it. I'm just going to kill him. I'm going to come down and kill him." McGowan hung up the telephone and contacted her supervisor, and then she called the police. Subsequently, defendant arrived at the office, where she was arrested. She had no weapons in her possession. On cross-examination, McGowan stated that defendant never made any threats toward her over the telephone, even though defendant had been frustrated on many prior occasions.

Defendant testified that she was dissatisfied with Alpren's handling of her case and had called the office numerous times to complain about him. She initially tried to contact Alpren on April 18, 2000, at the number contained in his letter to her, but it was not the correct number. She then called McGowan because she knew McGowan was a supervisor, and she wanted to file a complaint about Alpren. She was upset during the conversation with McGowan and became very frustrated. Defendant stated that she never called with the intent of speaking with Alpren, nor did she threaten anyone. She told McGowan that she was coming to the office the next day to have someone give her a satisfactory explanation. Defendant stated that she went to the office to speak to a supervisor and did not know why the police were there or why she was arrested.

On appeal, defendant contends that she was not proven guilty beyond a reasonable doubt because the State failed to prove that at

the time she made the telephone call she intended to harass or threaten anyone. She argues that her purpose for the call was merely to file a complaint about Alpren's representation. She also contends that the trial court erred in considering her subsequent act of going to the office as proof of her intent when the telephone call was made. The State maintains that defendant's actions prior to the telephone call and during the ensuing conversation and her subsequent conduct following the threatening phone call were indicative of defendant's intent to threaten Alpern at the time she made the telephone call.

■ In determining whether evidence against a defendant was sufficient to prove guilt beyond a reasonable doubt, a reviewing court must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *People v. Williams*, 193 Ill. 2d 306, 338, 739 N.E.2d 455, 472 (2000). A reviewing court will not overturn a defendant's conviction based on insufficient evidence unless the proof is so improbable or unsatisfactory that a reasonable doubt exists as to the defendant's guilt. *Williams*, 193 Ill. 2d at 338, 739 N.E.2d at 472.

■ Section 1—1(2) of the Harassing and Obscene Communications Act (the Act) prohibits any person from "[m]aking a telephone call, whether or not conversation ensues, with the intent to abuse, threaten or harass any person at the called number." 720 ILCS 135/1—1(2) (West 2000); *People v. Spencer*, 314 Ill. App. 3d 206, 208, 731 N.E.2d 1250, 1251 (2000). While Illinois has never specifically addressed the issue of whether the specific intent element of the crime should be measured at the time the telephone call was placed or at the time that the threat was made, other jurisdictions with similar statutes have concluded that the specific intent is to be measured at the time the call is placed. See, *e.g.*, *State v. Wilcox*, 160 Vt. 271, 273-74, 628 A.2d 924, 925 (1993) (trial court erroneously instructed the jury that intent could be formed after initiating the telephone call); *Gormley v. Director, Connecticut State Department of Probation*, 632 F.2d 938, 941-42 (2d Cir. 1980); *State v. Hagen*, 27 Ariz. App. 722, 725, 558 P.2d 750, 753 (1976); *State v. Gattis*, 105 N.M. 194, 199, 730 P.2d 497, 502 (1986).

■ The reason for this interpretation is sound and in keeping with the legislative purpose of the statute. The statute was drafted in an effort to address concerns regarding infringement on protected speech. To avoid overbreadth challenges grounded on the first amendment, the legislature intended to make the act of making the call itself the crime rather than criminalizing the caller's speech. Thus, what is proscribed under section 1—1(2) of the Act (720 ILCS 135/1—1(2) (West 2000)) is the conduct of making the telephone call with the

requisite intent and not the mere threat that ensues. See *People v. Klick*, 66 Ill. 2d 269, 274, 362 N.E.2d 329, 331 (1977) (interpreting the former disorderly conduct statute regarding telephone calls made with the intent to annoy). For these reasons, we agree with the majority of other jurisdictions that the intent element of section 1—1(2) (720 ILCS 135/1—1(2) (West 2000)) is measured at the time the telephone call is placed.

■ With these principles in mind, we analyze whether the State proved beyond a reasonable doubt that at the time defendant initiated the telephone call, she did so for the intended purpose of threatening Alpern. A person acts intentionally when his conscious objective or purpose is to accomplish the result or engage in the conduct proscribed. 720 ILCS 5/4—4 (West 2000); *People v. Cooper*, 32 Ill. App. 3d 516, 518, 336 N.E.2d 247, 249 (1975). Intent may be inferred from surrounding circumstances and may be proved by circumstantial evidence. *People v. Maggette*, 311 Ill. App. 3d 388, 398, 723 N.E.2d 1238, 1245 (2000). The question of intent is one for the trier of fact and its ruling should not be reversed on appeal unless inherently impossible or unreasonable. *Maggette*, 311 Ill. App. 3d at 398, 723 N.E.2d at 1245.

■ Here, taking the evidence in the light most favorable to the State, there were sufficient facts upon which the trier of fact could have found the requisite intent. There was evidence that defendant had several prior contacts and made telephone calls to the department that were, while not threatening, increasingly combative and confrontational. Her tone of voice at the time she made the call was loud and irate and escalated as the conversation ensued. She stated that she did not want to listen to what McGowan had to say to her on the telephone but, rather, stated that, "I'm just sick of it. I'm going to kill him. I'm going to come down there and kill him." Within 30 minutes of making this statement, defendant appeared at the department. Based upon the totality of the surrounding circumstances here, and the reasonable inferences that could be drawn therefrom, we cannot say that the evidence was so unsatisfactory as to create a reasonable doubt that defendant had the requisite intent to threaten Alpren at the time the call was placed.

While we acknowledge that defendant may have also had a legitimate purpose in calling to complain about the representation given by Alpren, that does not foreclose the possibility that there was also an unlawful intent behind her call. The statute does not require that the telephone call be made "solely" for the purpose of threatening or harassing. Compare 720 ILCS 135/1—1(2) (West 2000) with *Commonwealth v. Strahan*, 30 Mass. App. 947, 949, 570 N.E.2d 1041,

1043 (1991) (State failed to show that purpose of call was "solely to harass" as required by statute).

We further reject defendant's argument that it was improper for the trial court to consider her subsequent conduct as evidence of her intent at the time she placed the telephone call. She relies upon the statement from *Klick* that the offense is "complete when the call was made, regardless of the character of the conduct that subsequently occurs," in support for her proposition of law that intent may not be inferred from subsequent circumstances. *Klick*, 66 Ill. 2d at 274, 362 N.E.2d at 331. Defendant's reliance on this statement is misplaced.

The supreme court in *Klick* was addressing the constitutionality of the former disorderly conduct statute, which criminalized the making of telephone calls with the intent to annoy. While recognizing the legitimate interest of the State in protecting the privacy of its citizens from certain unwanted telephone annoyances such as threats, the court held that the language of the statute in question was overly broad because it did not distinguish between reasonable and unreasonable annoyances. *Klick*, 66 Ill. 2d at 274, 362 N.E.2d at 331. The court rejected the State's argument that implicit in the statute is the requirement that the call be made in an unreasonable manner. The court reasoned that because the crime is committed at the time the call is made, the State could not consider the character of the conduct that subsequently occurred to determine whether the annoyance was unreasonable. *Klick*, 66 Ill. 2d at 274, 362 N.E.2d at 331. Accordingly, the court found the former statute unconstitutional. The intent element of the statute was never addressed.

Here, under section 1—1(2), we do not consider whether defendant's threat was unreasonable but, rather, whether her subsequent conduct was evidence of her intent at the time she placed the telephone call. It has always been the law that intent may be inferred from the surrounding circumstances. See, *e.g.*, *People v. Roberts*, 189 Ill. App. 3d 66, 73, 544 N.E.2d 1340, 1345 (1989) (although the offense of burglary is committed by an entry with the required intent, subsequent conduct is significant to the extent it bears upon the prior intent).

Accordingly, for the foregoing reasons, we affirm the judgment of the circuit court.

Affirmed.

HARTMAN and GREIMAN, JJ., concur.