No. 2--03--0138

______________________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS 

SECOND DISTRICT

______________________________________________________________________________

THE PEOPLE OF THE STATE ) Appeal from the Circuit Court

OF ILLINOIS, ) of Lake County.

)

Plaintiff-Appellee, )

) 

v. ) No. 02--CM--3755

)

TARA L. TAYLOR, ) Honorable

) Joseph R. Waldeck,

Defendant-Appellant. ) Judge, Presiding.

______________________________________________________________________________

JUSTICE BYRNE delivered the opinion of the court:

Defendant, Tara L. Taylor, appeals her conviction of harassment by telephone under section 1--1(2) of the Harassing and Obscene Communications Act (Act) (720 ILCS 135/1--1(2) (West 2002)), contending that the evidence was insufficient to allow the court to find that she had the requisite intent to harass.  Because we do not think that one can infer such intent from the use of a few vulgarities, we agree, and we reverse her conviction.

Defendant was charged by information with one count of harassment by telephone (making a telephone call with intent to harass) and was given a bench trial. GreDel Brown testified that on May 30, 2002, she found a single message on her answering machine, which she recalled as, "Are you and your friends that effing ghetto that you have to go to the web site and talk shit about a baby that's an innocent baby that just came into the world?"  Her seven-year-old daughter was with her when she played the message, and she felt harassed by the message.  She used "Star 69" to identify the source of the message and called the Gurnee police to report telephone harassment.  Officer Frank V. Tuggle came to Brown's house to investigate the complaint.  He made a tape of the message, which the State played for the court:

"I was just wondering if you and your friends are that [inaudible, one word] ghetto and low class that you have to go onto a web site uh talking shit on-line about a child that just came into this world just because you're jealous that it's not yours. [Inaudible, several words] grow up and learn how to spell."

The quality of the recording is generally poor and background noises nearly drown out the speech at some points.  At the point transcribed as "inaudible, one word," a spike of background noise occurs.  At that point, the speaker uses a word which one could reasonably understand as either "effing" or "fucking." 

 Officer Tuggle testified that he called defendant to question her about the message, and defendant admitted that she was the one who left it.  He called her again later that day to tell her that the complaining witness was going to press charges against her.  Early in the morning of May 31, defendant went to the police station.  She asked Officer Tuggle what the nature of the charge was, and after he explained, she said that leaving the message was wrong and she should not have done it.  She made a written statement, which the court admitted:

"I, Tara Taylor am stating that I called Del Brown's house on 5/31/02 [
sic
] leaving a message that was my opinion.  I was upset that there were nasty comments (that I believe she wrote) on the Lake Forest Hospital[']s web nursery about a child that was born.  This child is fathered by her boyfriend Bryant Jones.  She calls and harasses me and my best friend Jessica Ruple (the baby's Mother).  We are both in the process of getting charges filed against Del Brown." 

Defendant testified that she did make the call.  She thought her use of such language was wrong, but she used it because she was angry.  Under cross-examination, she admitted that she had used the word "fucking" in the message.  She called Brown because she was upset about a series of approximately 35 messages posted on an Internet bulletin board or guest book regarding her god-daughter, Teagan.  Teagan was the daughter of Jessica Ruple, who had been defendant's friend for seven years.  Moreover, defendant had been with Jessica when she gave birth and had baby-sat Teagan from her birth until sometime after May 2002.  Teagan's father was Bryant Jones, but Jones was in a relationship with Brown.  Teagan was born at Lake Forest Hospital, which maintains a website that displays photographs of babies born at the hospital next to the first names of the parents and the infants' dates of birth.  The site allows visitors to post messages.  Defendant had visited the site and seen a series of messages disparaging Jessica and Teagan--saying, for instance, that Teagan was ugly, fat, and had a big head.  Some of the messages were signed "Del," the name by which defendant knew Brown.  Defendant believed that Brown had left the messages, and defendant had called Brown to express her opinion of Brown's actions.

The court found defendant guilty:

"[I]f she had merely called to ask why it was needed to put those negative comments on the web site, that would not have been harassment by telephone pursuant to the statute.  But *** by her very own statements she says that the language was wrong and within the purview of the statute of harassment by telephone."  

Defendant filed a posttrial motion, arguing that the evidence was insufficient to establish defendant's guilt beyond a reasonable doubt.  The court denied the motion, and defendant timely appeals.  

Defendant argues that the State had no evidence that defendant intended to harass Brown.  We agree.  A trier of fact cannot infer an intent to harass in the required sense solely from the use of some vulgar language in a telephone call that otherwise had a legitimate purpose.  Defendant also contends that the proof that Brown felt harassed was insufficient.  Because we resolve this matter in defendant's favor based on her first claim, we need not consider the second contention.

The State charged defendant under section 1--1(2) of the Act, which prohibits "[m]aking a telephone call, whether or not conversation ensues, with intent to abuse, threaten or harass any person at the called number."  720 ILCS 135/1--1(2) (West 2002).  Specifically, it charged her with calling with intent to harass.  Before we can consider whether the State presented satisfactory evidence that defendant called Brown with intent to harass, we need to consider what "to harass" means in this context.  We review the interpretation of a statute 
de
 
novo
.  
People v. Donoho
, 204 Ill. 2d 159, 172 (2003).

In 
People v. Spencer
, 314 Ill. App. 3d 206, 208 (2000), a previous case considering section 1--1(2), we adopted the definition of "harassment" from the Illinois Domestic Violence Act of 1986 (Domestic Violence Act) (750 ILCS 60/101 
et
 
seq
. (West 2002)):  "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances; would cause a reasonable person emotional distress; and does cause emotional distress to the petitioner" (750 ILCS 60/103(7) (West 2002)).  In 
People v. Zarebski
, 186 Ill. App. 3d 285, 294 (1989), we found that the word "harassment" in the Domestic Violence Act implies "intentional acts which cause someone to be worried, anxious, or uncomfortable."  However, as the present context shows, considerations of constitutionality and statutory interpretation require that emotional distress, worry, anxiety, and discomfort must refer to emotional disturbances significantly more serious than the mildest states those words suggest.  

The structure of section 1--1 of the Act  implies that the meaning of "harass" is distinct from that of "offend."  Section 1--1(1) bars telephone communication for the purpose of "[m]aking any comment, request, suggestion or proposal which is obscene, lewd, lascivious, filthy or indecent with an intent to offend."  720 ILCS 135/1--1(1) (West 2002).  If showing intent to offend were sufficient to show intent to harass, section 1--1(1) would be superfluous, because a person could be convicted under subsection 1--1(2) simply for making a call with the intent to offend.
(footnote: 1)
 Further, as our supreme court recognized, a broad interpretation of "harass" would place section 1--1(2) in serious constitutional jeopardy.  When faced with a first amendment challenge to  that section, the court invoked the maxim "
noscitur
 
a
 
sociis
"--that one knows a word by the company it keeps--to hold that "the words 'abuse' and 'harass' take color from the word 'threaten' and acquire more restricted meanings."  
People v. Parkins
, 77 Ill. 2d 253, 257-58 (1979).  In this way, the court found that these words had meanings narrow enough to satisfy first amendment concerns.  The classic gloss of "
noscitur
 
a
 
sociis
" is that "general and specific words which are capable of an analogous meaning[,] being associated together, take color from each other, so that the general words are restricted to a sense analogous to the less general."  
Misch v. Russell
, 136 Ill. 22, 25 (1891).  Thus, we take it that "harass" and "abuse," which do not necessarily imply disturbing or frightening actions, take some of that implication from the word "threaten."  Thus, for a call to be made with intent to harass, the caller must have had the intent to produce emotional distress akin to that of a threat.

The court's earlier opinion in 
People v. Klick
, 66 Ill. 2d 269, 274 (1977), confirms that "harass" in section 1--1(2) cannot include the less serious actions the word sometimes implies
.  In 
Klick
, the court held unconstitutional on first amendment grounds the previous telephone harassment statute, section 26--1(a)(2) of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 26--1(a)(2)) (a provision of the disorderly conduct law).  It found that section 26--1(a)(2), which prohibited " '[w]ith intent to annoy another, [the] mak[ing of] a telephone call, whether or not conversation thereby ensues,' " encroached upon the first amendment right to communicate with another in a reasonable manner.  
Klick
, 66 Ill. 2d at 272, quoting Ill. Rev. Stat. 1973, ch. 38, par. 26--1(a)(2).  Evidently, then, if a prohibition on a call made with intent to harass is not constitutionally offensive, the level of emotional distress or discomfort the caller intended to produce must be substantially greater than mere annoyance.

The 
Klick
 court also explicitly noted that the law must not improperly impede speech delivering a rebuke or expressing a dispute:

"We do not suggest that the first amendment gives one the unlimited right to annoy another, by speech or otherwise.  There are, however, many instances when, without breaching the peace, one may communicate with another with the possible intention of causing a slight annoyance in order to emphasize an idea or opinion, or to prompt a desired course of action that one is legitimately entitled to seek.  Conceivably, [the former section 26--1(a)(2)] could make criminal a single telephone call made by a consumer who wishes to express his dissatisfaction over the performance of a product or service; a call by a businessman disturbed with another's failure to perform a contractual obligation; by an irate citizen, perturbed with the state of public affairs, who desires to express his opinion to a public official; or by an individual bickering over family matters.  First amendment protection is not limited to amiable communications."  
Klick
, 66 Ill. 2d at 274. 

The court thus recognized that expressions of displeasure, and even anger, are protected objects of telephone communication.

Recognizing the meaning of "harass" in section 1--1(2), we hold that the evidence in this case does not support the inference that defendant intended her call to harass Brown.  Although we think the trial court might properly have inferred from defendant's words an intent to express anger and perhaps to offend, this was insufficient for it to infer that she had an intent to harass in the relevant sense.

We will not set aside a criminal conviction on review for want of evidence unless the evidence was so improbable or unsatisfactory that there remains a reasonable doubt of the defendant's guilt.  
People v. Kitchen
, 159 Ill. 2d 1, 25 (1994).  To preserve the trier of fact's role as weigher of the evidence, we consider all of the evidence in the light most favorable to the prosecution.  We then ask whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.  
Kitchen
, 159 Ill. 2d at 25.  The trier of fact may properly infer intent from the circumstances surrounding the alleged criminal act (
People v. Jones
, 334 Ill. App. 3d 420, 425 (2002)), and we accept any reasonable inferences that the trier of fact might have drawn from the evidence (see 
People v. Jimerson
, 127 Ill. 2d 12, 43 (1989)).

Here, the court properly recognized that it could not infer an intent to harass from defendant's calling to deliver a rebuke:  "If she had merely called to ask why it was needed to put those negative comments on the web site, that would not have been harassment by telephone pursuant to the statute."  The law cannot bar defendant from expressing her displeasure with Brown's actions.  However, the court incorrectly found that defendant's use of vulgarity brought the call within the provision's reach: "by her very own statements she says that the language was wrong and within the purview of the statute of harassment by telephone."  Section 1--1(2) does not bar the use of vulgar or indecent language in a telephone call.  It bars only calls made with improper intent.  720 ILCS 135/1--1(2) (West 2002).  The use of vulgar language is relevant only to the extent that it can support an inference of an intent to harass.

We do not rule out the possibility that marked and extensive use of vulgarities could support such an inference, even in a call with a discernable legitimate purpose, particularly if the use of such language appears to have become an end in itself to the caller.  However, defendant's language, assuming even the more offensive understanding of what she said, was not of that kind.  It simply lacks any indication of intent to cause emotional distress in the relevant sense.  Defendant may have intended her language to offend, as her admission that leaving the message was wrong suggests, but intent to offend is not sufficient to sustain her conviction. 

For the reasons stated, we reverse the judgment of the circuit court of Lake County.

Reversed.

HUTCHINSON and GILLERAN JOHNSON, JJ., concur. 

FOOTNOTES
1:
The State specifically charged defendant under section 1--1(2), and therefore we do not need to consider the applicability of section 1--1(1) to her actions.  We do not, however, wish to leave the impression that we are reversing defendant's conviction simply because the State charged her under the wrong section.  We suspect that section 1--1(1) is subject to an analysis corresponding to the  analysis of section 1--1(2) in 
People v. Parkins
, 77 Ill. 2d 253, 257-58 (1979), so that the words "filthy" and "indecent" take color from the words "obscene," "lewd," and "lascivious," and that therefore the "comment, request, suggestion or proposal" must be pronouncedly sexual to fall within the scope of the provision.