2021 IL App (1st) 161112-U

No. 1-16-1112

Order filed April 21, 2021

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 15 MC1 217477 |
| | ) | |
| HOWARD MCDOWELL, | ) | Honorable |
| | ) | Clarence Burch, |
| Defendant-Appellant. | ) | Judge presiding. |

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice Howse and Justice McBride concurred in the judgment.

**ORDER**

¶ 1   *Held*:   We affirm defendant's conviction for telephone harassment where there was sufficient evidence to convict him of the offense, where the insufficiency of the misdemeanor complaint did not prejudice him and where the trial court substantially complied with Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) before allowing him to represent himself.

¶ 2   Following a jury trial, in which he represented himself, defendant Howard McDowell was found guilty of telephone harassment, a Class B misdemeanor, and sentenced to two years' probation. On appeal, defendant contends that: (1) the State failed to present sufficient evidence

of his guilt for the offense; (2) the misdemeanor complaint did not set forth all of the elements of the offense; and (3) the trial court failed to properly admonish him before allowing him to represent himself. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4                                    A. Pretrial

¶ 5     The State charged defendant by misdemeanor complaint with telephone harassment. The complaint was amended twice without objection, first to correct the date of the offense and second, to correct the citation of the offending statute, the latter which occurred on the day of defendant's trial. After both amendments, the complaint alleged that, on July 10, 2015, defendant knowingly and intentionally called Leroy Rogers' cell phone multiple times, harassing him and threatening him by stating " 'bring death to you and your family' " in violation of section 26.5-2(a)(2) of the Criminal Code of 2012 (Code) (720 ILCS 5/26.5-2(a)(2) (West 2014)).

¶ 6     During defendant's first court appearance, the trial court asked him if he had an attorney and defendant responded that he did not. Defendant explained that this case was "more of a property case, landlord versus tenant" and he had an attorney, but that attorney gave him his money back "because [the attorney] didn't properly represent [him]." The court asked defendant again if he had an attorney, but defendant reiterated that "[w]e parted." The court told defendant he needed an attorney but defendant denied that he needed one. The court once again told defendant he needed an attorney, but defendant repeated that he did not have one. The court then attempted to ask defendant about his finances "to see if [he could] qualify for the Public Defender," but defendant asserted that he "won't qualify." As such, the court asked defendant to come to his next court appearance with an attorney. At the subsequent court date, the court asked defendant where his attorney was, but defendant again remarked that he did not have one. The court again told

defendant he needed one, but defendant instead asserted that he wanted a jury trial. The court told defendant that, despite his jury demand, he still needed an attorney and that it would be transferring his case to a courtroom that performs jury trials.

¶ 7    Defendant's case was transferred to another courtroom, and two weeks later, he appeared before a new judge. The trial court asked him who his attorney was and defendant remarked "no one." After defendant began talking about his case, the court told defendant that they needed to resolve his attorney issue. The court asked defendant if he wanted to represent himself or have the services of the public defender. Defendant responded that he would "rather deal with my own" and noted that he had "been in court before." Defendant added that he wanted a jury trial and wanted to "explain to them what took place" and why "this guy owes me all this money." The court interjected before defendant could continue and told him that, before he could represent himself, it had to inform him of "a couple things" under Illinois Supreme Court Rule 401(a) (eff. July 1, 1984).

¶ 8    First, the trial court noted that defendant was "facing a very serious charge" of a Class A misdemeanor for telephone harassment punishable by a term of up to one year in the Cook County Department of Corrections, a fine up to $2500, or a combination of both. Defendant responded, "[w]hatever." The court then stated: "Understanding that, do you still wish to persist in your desire to represent yourself?" Defendant replied that he wanted a jury trial. The court noted the request and continued admonishing defendant. It told defendant that he was "going against very experienced state's attorneys," who had four-year degrees, law degrees and had tried many successful jury trials. The court added that it would not be able to help defendant. In response, defendant began discussing the facts of his case and that he would let the jury decide. Thereafter,

the court observed that it had admonished defendant under Rule 401(a), began discussing discovery and ultimately provided a date for defendant's jury trial.

¶ 9    Defendant's very next court appearance was his jury trial. After addressing the parties and before they selected a jury, the trial court asked defendant if he was "still persisting in [his] desire to represent" himself. After defendant responded affirmatively, the court asserted that it "must admonish" him pursuant to Rule 401(a). The court began by informing defendant that he had "the right to be represented by a public defender," if he could not afford an attorney himself. The court asked defendant if wanted to be represented by a public defender to which defendant responded "[n]o." Next, the court observed that defendant was charged with telephone harassment, "a very serious charge," which was punishable by up to one year in the Cook County Department of Corrections, a fine of up to $2500, or a combination of both. The court asked defendant if he still wanted to represent himself to which he responded "[d]efinitely. I paid a lawyer. I got my money back from a lawyer." Finally, the court reiterated the severe disadvantage defendant would face given the experience of the assistant State's attorneys and that it could not help him during the trial. Defendant remarked that he went to engineering school at Purdue and completed many more hours of education than was necessary to graduate. The court noted that it had admonished defendant pursuant to Rule 401(a) and found defendant qualified to represent himself. The case proceeded to jury selection and eventually the trial.

¶ 10                                    B. Trial

¶ 11    In the State's case, Leroy Rogers testified that he was a landlord and had bought a property in January 2014 that needed some work. Rogers and his wife rehabbed the property themselves, but did not complete all of the work needed. In May 2014, Rogers rented an apartment at the property to defendant, who was being evicted from his current residence. Defendant initially gave

Rogers a year's worth of rent up front, which Rogers deposited in an interest-bearing bank account. When Rogers rented the apartment to defendant, he told defendant that some work still needed to be done, such as new windows and fixing the back porch, but he could not complete the work until he had more money. When defendant filled out the application, he listed his phone number, which Rogers saved in his cell phone. Every month, Rogers would withdraw defendant's monthly rent from the bank account. While defendant resided in the apartment, Rogers asserted that he made the repairs that defendant requested.

¶ 12    Rogers lived in the South Shore neighborhood of Chicago and in the afternoon of July 10, 2015, he began receiving phone calls on his cell phone from defendant. Rogers knew it was defendant because of the phone number, and he ignored the calls and let them go to voicemail. The calls continued from the afternoon until around 11 p.m. that night, and in total, Rogers received five phone calls and voice messages from defendant. During the trial, the State played the five voice messages for the jury. The first message was mostly unintelligible except for defendant stating an address toward the end. Indeed, Rogers believed that defendant accidentally dialed him and left him the first message. In the second message, defendant appeared to be discussing an ongoing lawsuit between him and Rogers. In the message, defendant called Rogers' lawyer various slurs, and he called Rogers a slumlord and "crooked." Defendant also appeared to tell Rogers that he needed "to get your s*** together" because "folks watching you." In the third message, defendant began by calling Rogers various slurs, using various swear words and calling him a slumlord. Defendant also told Rogers that he was "gonna get what you come" and "your punk a** gonna get what you got coming, you punk a** f***, you punk n***." Defendant also appeared to tell Rogers "death on your b*** a** and your motherf*** family." In the fourth message, defendant continued to berate Rogers, using slurs and swear words, eventually saying "watch what

happens to your b*** a**." In the final message, defendant stated: "f*** a** slumlord, d*** face mother***, death to your whole family f***." In the messages, the slurs were both racial and homophobic in nature, and defendant sounded combative and angry except in the first message. Rogers testified that he recognized defendant's voice in all five voice messages. At the conclusion of Rogers' testimony, the State admitted the exhibit containing the voice messages into evidence.

¶ 13    In the defense's case, defendant called his wife, Loretta Lowel-McDowell, who testified that the apartment they had rented from Rogers had various issues while they lived there that necessitated them calling the police and fire department multiple times. They often went without the heat working, there was often a foul odor emanating from the bathroom and their stove leaked carbon monoxide. However, whenever Lowel-McDowell or defendant complained about the issues, Rogers acted nonchalant. Lowel-McDowell also testified that, one time, as they were leaving the apartment, Rogers was outside and "act[ed] like he want[ed] to fight" defendant, but his wife held him back. Defendant also testified and essentially stated that Rogers did not make repairs to their apartment when requested. At one point during his testimony, defendant noted that, in July 2015, his son was home on summer break and actually ran into Rogers at a Walgreens store. Defendant's son apparently asked Rogers to give back defendant's security deposit. Later during defendant's testimony, he remarked that Rogers "talking somebody called him. My son sound just like me. My son was fully aware," seeming to insinuate that his son made the phone calls to Rogers.

¶ 14    During closing arguments, the State asserted that, based on the content of defendant's various voice messages, it had proven that he intended to threaten, harass and abuse Rogers and thus had proven him guilty of telephone harassment. In defendant's closing argument, he made various contentions, although most of them consisted of him discussing details unrelated to the

charged offense. At one point, though, defendant argued that the State never produced evidence about where Rogers was when he received the phone calls. At another point, defendant posited that it was his son who made the phone calls, not him. Lastly, defendant asserted that Rogers did not feel threatened. Following the closing arguments, the jury found defendant guilty.

¶ 15                                C. Posttrial

¶ 16    The trial court subsequently sentenced him to two years' probation, anger management, and imposed various fines and fees. The court also entered a no-contact order against defendant toward Rogers. After sentencing, defendant accepted the appointment of a public defender, who filed a motion for new trial and to reconsider the sentence. In the motion for new trial, defendant argued that the State failed to sufficiently prove he had the specific intent to harass or threaten Rogers and that his complaint did not state a cause of action, where it did not include the element of intent. The court ultimately denied defendant's motion for new trial and to reconsider the sentence.

¶ 17    Thereafter, defendant appealed.

¶ 18                                II. ANALYSIS

¶ 19                          A. Sufficiency of the Evidence

¶ 20    Defendant first contends that his conviction must be reversed where the State failed to present sufficient evidence of his guilt for telephone harassment. Specifically, defendant argues that the State did not prove beyond a reasonable doubt that he had the specific intent to harass or threaten Rogers when he called and left the voice messages on Rogers' cell phone.

¶ 21    When a defendant challenges the sufficiency of the evidence, the reviewing court must determine if, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the elements of the offense proven beyond a reasonable doubt. *People v.*

*Gray*, 2017 IL 120958, ¶ 35. All reasonable inferences from the evidence must be made in the State's favor. *People v. Hardman*, 2017 IL 121453, ¶ 37. Under this standard of review, it is not the reviewing court's role to retry the defendant. *Gray*, 2017 IL 120958, ¶ 35. And the reviewing court will not substitute its judgment for that of the trier of fact on issues involving the credibility of witnesses, the weight to be afforded to the trial evidence, the drawing of reasonable inferences from the evidence and the resolution of conflicts within the evidence. *Id.* We may only reverse a conviction if "the evidence is so unreasonable, improbable, or unsatisfactory that it justifies a reasonable doubt of the defendant's guilt." *Id.* Specifically, concerning the issue of a defendant's intent, it is a question "for the trier of fact and its ruling should not be reversed on appeal unless inherently impossible or unreasonable." *People v. Jones*, 334 Ill. App. 3d 420, 424 (2002).

¶ 22      In order to prove defendant guilty of telephone harassment, the State had to prove that he used telephone communication and made a phone call "with intent to abuse, threaten or harass any person at the called number" regardless of whether the other person answered the phone. 720 ILCS 5/26.5-2(a)(2) (West 2014). The only element of telephone harassment that defendant challenges on appeal is his intent. "A person acts intentionally when his conscious objective or purpose is to accomplish the result or engage in the conduct proscribed." *Jones*, 334 Ill. App. 3d at 424. The intent of the defendant is determined at the time he places the phone call. *Id.* Intent need not be proved with direct evidence, but rather can be inferred from the circumstances surrounding the conduct of an individual. *Id.*

¶ 23      Harassment is defined as "knowing conduct which is not necessary to accomplish a purpose that is reasonable under the circumstances, that would cause a reasonable person emotional distress and does cause emotional distress to another." 720 ILCS 5/26.5-0.1 (West 2014). In other words, harassment is an intentional act that causes "someone to be worried, anxious, or uncomfortable."

*People v. Zarebski*, 186 Ill. App. 3d 285, 294 (1989). These feelings "must refer to emotional disturbances significantly more serious than the mildest states those words suggest." *People v. Taylor*, 349 Ill. App. 3d 839, 842 (2004). For a message to be sufficiently made with a harassing intent, the defendant must have intended to elicit an emotional distress similar to a threat. *Id.*

¶ 24    Concerning threats, there are first amendment concerns when the government seeks to moderate and punish certain speech. *People v. Ashley*, 2020 IL 123989, ¶ 30. But the United States Supreme Court has determined that certain categories of speech do not have first amendment protections, including true threats. *Id.* ¶ 31. True threats are "statements where the speaker means to communicate a serious expression of an intent to commit an act of unlawful violence to a particular individual or group of individuals." *Virginia v. Black*, 538 U.S. 343, 359 (2003); see also *Ashley*, 2020 IL 123989, ¶ 33 (citing the "true threats" discussion from *Black*). "The speaker need not actually intend to carry out the threat. Rather, a prohibition on true threats 'protect[s] individuals from the fear of violence' and 'from the disruption that fear engenders,' in addition to protecting people 'from the possibility that the threatened violence will occur.' " *Black*, 538 U.S. at 359-60 (quoting *R.A.V. v. St. Paul*, 505 U.S. 377, 388 (1992)).

¶ 25    In the present case, the State presented sufficient evidence to prove defendant had the requisite intent to threaten or harass Rogers when he told Rogers "death to your whole family" in the final message he left that day. At the time defendant made the phone calls and left the voice messages for Rogers, the two men were apparently involved in civil litigation as a result of their landlord-tenant relationship, which, based on the trial testimony, had resulted in an acrimonious relationship between them. In addition, defendant left three earlier antagonistic voice messages for Rogers, in which he called Rogers racial and homophobic slurs using a loud, abrasive and menacing tone. Amongst the remarks defendant made were that Rogers needed "to get [his] s***

together" because "folks watching you," that Rogers was "gonna get what you come," and "your punk a** gonna get what you got coming, you punk a** f***, you punk n***." Defendant also apparently stated "death on your b*** a** and your motherf*** family" and told Rogers to "watch what happens to your b*** a**."

¶ 26　Considering these earlier intimidating and abrasive messages, and the acrimonious relationship between the two men, when defendant told Rogers "death to your whole family," a rational trier of fact could have found that this was not merely to offend Rogers, insult him or express mere anger at him, as defendant suggests. See *People v. Klick*, 66 Ill. 2d 269, 274 (1977) (expressing feelings of dissatisfaction, displeasure and anger are protected forms of telephone communication). Rather, a rational trier of fact could have found that defendant intended to cause Rogers emotional distress sufficient to support an intent to harass or intended to engender fear in Rogers that he was the target of violence sufficient to support an intent to threaten. See *Jones*, 334 Ill. App. 3d at 421, 424 (finding sufficient evidence that the defendant intended to threaten an attorney who prosecuted a civil case on her behalf from the City of Chicago's department of consumer services to support a conviction for telephone harassment where she had an existing hostile relationship with the attorney and then made a series of telephone calls to his office that, "while not threatening, [were] increasingly combative and confrontational" before leaving a final message indicating that she wanted to kill the attorney). Whether or not defendant actually planned on following through with the act is irrelevant, as all that matters is that defendant's intent was to communicate a threat. See *Black*, 538 U.S. at 359-60; *Ashley*, 2020 IL 123989, ¶ 33. As such, based on the trial evidence and the reasonable inferences therefrom, the jury's finding that defendant intended to harass or threaten Rogers was not inherently unreasonable.

¶ 27    Nevertheless, to support his argument that the State failed to establish that he had the requisite intent, defendant highlights *People v. Wood*, 2017 IL App (1st) 143135, ¶¶ 22, 28, a case involving a defendant who was convicted of threatening a judge that was reversed on appeal because of insufficient evidence of a true threat. However, in *Ashley*, 2020 IL 123989, ¶ 59, our supreme court found that the appellate court in *Wood* "improperly expanded the holding in *Black* and failed to fully consider the reasoning expressed in *Elonis* [*v. United States*, 575 U.S. 723 (2015)]." Therefore, *Wood* is unpersuasive.

¶ 28    Defendant also relies on *Taylor*, 349 Ill. App. 3d at 840, where a defendant was charged with telephone harassment for making one phone call and leaving one message for a woman. In the message, the defendant stated:

> " 'I was just wondering if you and your friends are that [inaudible, one word] ghetto
> and low class that you have to go onto a web site uh talking s*** on-line about a
> child that just came into this world just because you're jealous that it's not yours.
> [Inaudible, several words] grow up and learn how to spell.' " *Id.*

At trial, the defendant admitted that she left the message and asserted her message was in response to a series of negative remarks the complainant had left on a hospital website, which displayed photographs of the defendant's goddaughter. *Id.* at 841. The trial court found the defendant guilty of telephone harassment. *Id.* On appeal, this court found there was insufficient evidence that the defendant committed the offense where an intent to harass could not be inferred from the evidence. *Id.* at 844-45. The court found that, although the defendant used vulgarities, her remarks at best demonstrated an intent to offend and did not show she intended to cause emotional distress to the recipient of her call. *Id.* The language used by the defendant in *Taylor* in one message drastically pales in comparison to the series of menacing voice messages left by defendant on Rogers' phone,

especially when coupled with the pre-existing acrimonious relationship between the two men. *Taylor* is therefore unconvincing. Consequently, there was sufficient evidence to sustain defendant's conviction for telephone harassment.

¶ 29                                    B. Insufficiency of the Complaint

¶ 30     Defendant next contends that his conviction should be reversed because the misdemeanor complaint did not set forth all of the elements of the offense of telephone harassment where it failed to allege that he had the requisite intent. As noted, after two amendments to the complaint by the State, the complaint eventually alleged that, on July 10, 2015, defendant knowingly and intentionally called Leroy Rogers' cell phone multiple times, harassing him and threatening him by stating " 'bring death to you and your family' " in violation of section 26.5-2(a)(2) of Code (720 ILCS 5/26.5-2 (a)(2) (West 2014)).

¶ 31     The defendant has a fundamental right to be informed of the nature and cause of the criminal allegations against him. *People v. Carey*, 2018 IL 121371, ¶ 20. To this end, section 111-3(a) of the Code of Criminal Procedure of 1963 (725 ILCS 5/111-3(a) (West 2014)) requires that, among other details, a criminal complaint set forth "the nature and elements of the offense charged." However, the timing of when the defendant raises the alleged insufficiency of the complaint is important. *Carey*, 2018 IL 121371, ¶ 21. If the defendant challenges the complaint before trial, it must strictly comply with the pleading requirements. *Id.* However, when the defendant challenges the complaint for the first time after trial, as was the case here, he must "show that he was prejudiced in the preparation of his defense." *People v. Rowell*, 229 Ill. 2d 82, 93 (2008). In analyzing whether the defendant was prejudiced in the preparation of his defense, we must determine whether the complaint "apprised the accused of the precise offense charged with sufficient specificity to prepare his defense and to allow him to plead a resulting conviction as a

bar to future prosecutions arising from the same conduct." *Id.* The sufficiency of a complaint is a question of law that we review *de novo*. *People v. Espinoza*, 2015 IL 118218, ¶ 15.

¶ 32 The State tacitly concedes that the element of intent—to harass and to threaten—was missing from defendant's misdemeanor complaint. But "[a] charging instrument is to be read as a whole, and where a statute is cited in a count, the statute and count are to be read together." *People v. Hoffman*, 146 Ill. App. 3d 823, 833 (1986). Under this principle of law, the State argues that the complaint provided the statutory citation to telephone harassment and thus, when read in conjunction with complaint's allegations, apprised defendant of the precise offense with sufficient specificity to prepare his defense despite the fact the intent element was missing.

¶ 33 However, when the State filed the complaint against defendant, it initially cited the offending statute as section 1.1 of the Harassing and Obscene Communications Act (720 ILCS 135/1-1), which had been repealed by the time the State charged defendant in August 2015. See Pub. Act 97-1108 (eff. Jan. 1, 2013) (repealing 720 ILCS 135/1-1 and adding 720 ILCS 5/26.5-2). The State moved to, and was granted leave by the trial court to, amend the complaint and correct the statutory citation on the day of defendant's jury trial and only minutes before the parties selected a jury. Given the timing of the amendment to the complaint, we cannot say that defendant was apprised of the precise offense with sufficient specificity to prepare his defense by simply reading the complaint and statutory citation together.

¶ 34 Nevertheless, defendant was not prejudiced by the insufficiency of the complaint. As noted, defendant represented himself. And during his cross-examination of Rogers, his own testimony and the direct examination of his wife, defendant's defense was one part attempting to cast Rogers in a bad light as a crooked "slumlord" and another part attempting to blame his son for the phone calls and messages, points he repeated during his closing argument. We cannot fathom that

defendant would have changed one bit about how he represented himself had the intent element been included in the complaint. Furthermore, as the State points out, because defendant blamed his son for the voice messages, defendant's only true legal defense was that he never made the phone calls. And with this defense, his intent was irrelevant to the charged offense because he claimed he was not responsible for the calls to begin with. In all, although the intent element was missing from the complaint, it still apprised defendant of the precise offense charged with sufficient specificity so he could prepare his defense. Consequently, he was not prejudiced by the insufficiency of the complaint, and the insufficiency presents no basis for reversing his conviction.

¶ 35                          C. Rule 401(a) Admonishments

¶ 36    Defendant lastly contends that the trial court failed to properly admonish him before allowing him to represent himself. Specifically, defendant argues that the court misstated the maximum possible sentence for telephone harassment, did not provide the minimum sentence for the offense and failed to inform him of his right to counsel.

¶ 37    Initially, though, defendant acknowledges that he did not properly preserve this claim of error for review, but asserts that we may review the claim under the plain-error doctrine. Under this doctrine, we may review an unpreserved claim of error if there was a clear or obvious error and either (1) the evidence was so closely balanced that the error, by itself, threatened to tip the scales of justice against the defendant, regardless of the gravity of the error, or (2) the error was so serious that it resulted in an unfair trial to the defendant and challenged the integrity of the judicial process, regardless of how close the evidence was at trial. *People v. Hall*, 194 Ill. 2d 305, 335 (2000). The defendant has the burden to show plain error occurred, and the first step is to determine whether an error occurred. *People v. Thompson*, 238 Ill. 2d 598, 613 (2010).

¶ 38    The sixth amendment of the United States Constitution not only guarantees a defendant the right to the assistance of counsel but also the right to proceed without counsel. U.S. const., amend. VI; *People v. Wright*, 2017 IL 119561, ¶ 39. However, in order for the defendant to waive his right to counsel, he must do so knowingly, intelligently and voluntarily. *Wright*, 2017 IL 119561, ¶ 39. To ensure a competent waiver, Illinois Supreme Court Rule 401(a) (eff. July 1, 1984) requires the trial court to admonish the defendant in a certain manner before allowing him to waive his right to counsel. Under Rule 401(a), the court must inform the defendant of and ensure he understands:

> "(1) the nature of the charge;
>
> (2) the minimum and maximum sentence prescribed by law, including, when applicable, the penalty to which the defendant may be subjected because of prior convictions or consecutive sentences; and
>
> (3) that he has a right to counsel and, if he is indigent, to have counsel appointed for him by the court." *Id.*

Although the court must comply with Rule 401(a), it need not strictly comply. *Wright*, 2017 IL 119561, ¶ 41. Instead, "substantial compliance will be sufficient to effectuate a valid waiver if the record indicates that the waiver was made knowingly and voluntarily, and the admonishment the defendant received did not prejudice his rights." *People v. Haynes*, 174 Ill. 2d 204, 236 (1996). The intent of these admonishments is to ensure there is no doubt that the defendant appreciates the gravity and consequences of the charged offense. *People v. Meeks*, 249 Ill. App. 3d 152, 171-72 (1993). Whether the trial court properly admonished the defendant under Rule 401(a) is a question of law, which we review *de novo*. *People v. Pike*, 2016 IL App (1st) 122626, ¶ 114.

¶ 39    We begin with the offense as charged, telephone harassment, which was a Class B misdemeanor (720 ILCS 5/26.5-2(a)(2) (West 2014); 720 ILCS 5/26.5-5(a) (West 2014)), and

punishable by a term of imprisonment of no more than six months, a fine not to exceed $1500 or a combination of both. 730 ILCS 5/5-4.5-60(a), (e) (West 2014). Yet, in admonishing defendant, which occurred twice in this case, the trial court informed him that he had been charged with a Class A misdemeanor and was facing a term of imprisonment of up to one year, a fine of up to $2500 or a combination of both. Cleary, the court overstated the possible consequences associated with a conviction for telephone harassment.

¶ 40    There is undoubtedly a worry when the trial court *understates* the possible consequences associated with a conviction, as a defendant could waive his right to counsel under the erroneous belief that the charge offense is not as serious as it really is. See, *e.g.*, *People v. LeFlore*, 2013 IL App (2d) 100659, ¶ 53, *aff'd in part, rev'd in part on other grounds*, 2015 IL 116799; *People v. Bahrs*, 2013 IL App (4th) 110903, ¶¶ 14-15; *People v. Jiles*, 364 Ill. App. 3d 320, 330 (2006); but see *Wright*, 2017 IL 119561, ¶ 54 (finding substantial compliance with Rule 401(a) where, although the trial court understated the maximum penalty by 15 years, it "properly admonished [the] defendant in all [other] respects"). Those concerns are not present when the court *overstates* the maximum possible sentence because the court's error actually makes the charged offense seem more serious than it really is, and therefore, demonstrates to the defendant the more significant need to be represented by counsel. See *Meeks*, 249 Ill. App. 3d at 171-72 (the purpose of the Rule 401(a) admonishments is to ensure the defendant understands the gravity of the charged offense). Additionally, although the court did not inform defendant that he could receive probation and something less than a term of imprisonment, nothing in the record indicates that defendant would have changed his mind and forgone representing himself if he were told of the minimum possible sentence for a telephone harassment conviction. See *People v. Garcia*, 2017 IL App (1st) 133398, ¶ 22 (agreeing with the State's contention that, even though the trial court did not inform the

defendant of the minimum sentences for the charged offenses "nothing in the record shows defendant would have changed his mind as to representation").

¶ 41    Lastly, defendant argues that the trial court did not inform him that he had the right to counsel or, if indigent, the right to appointed counsel. It is true that, when the court initially admonished defendant about representing himself, it did not mention his right to counsel. However, the very next court appearance was the day of defendant's jury trial. And before the parties selected a jury, the court once again admonished defendant about representing himself. In doing so a second time, the court asked defendant if he was still "persisting in [his] desire to represent" himself? After defendant responded affirmatively, the court informed defendant that he had the right to be represented by a public defender, if he could not afford an attorney himself. Although the court did not provide this admonishment the first time, no substantive court proceedings occurred between the two admonishments by the court. Furthermore, multiple times before providing defendant the Rule 401(a) admonishments, the court mentioned to him that he could be appointed a public defender. Therefore, the court's failure to initially admonish defendant about his right to counsel was not prejudicial. See *Haynes*, 174 Ill. 2d at 236.

¶ 42    The trial court did overstate the maximum possible sentence for telephone harassment, failed to inform defendant of the minimum possible sentence for the offense and initially failed to admonish him about his right to counsel. Nevertheless, the court substantially complied with Rule 401(a) because these errors did not prejudice defendant's rights where he was led to believe his offense was more serious than it really was, knew of his right to counsel based on other proceedings and because the record as a whole clearly demonstrates that he wanted to represent himself. Numerous times, including at defendant's very first court appearance, the court expressed the importance for him to have representation in the case. And multiple times, defendant asserted his

desire to represent himself so he could "explain to [the jury] what took place." At defendant's third court appearance, after his case was transferred to another courtroom, the court asked who his attorney was to which defendant responded "no one." The defendant then told the court that he wanted to resolve his case on his "own." And then, on the day of his jury trial, defendant told the court that he had paid a lawyer, but "got [his] money back" from that lawyer and that he "definitely" wanted to represent himself. When the court remarked about the severe disadvantages defendant would face going against trained lawyers, defendant dismissed those concerns by noting he went to engineering school at Purdue. This is to say, defendant's desire to represent himself was unwavering.

¶ 43    In fact, had defendant been represented by an attorney, the jury would have likely not heard large portions of his cross-examination of Rogers and direct examination of Lowel-McDowell, as much of this testimony would have been deemed inadmissible based on various legal grounds. The trial record is replete with the State objecting to vast portions of defendant's cross-examination of Rogers and his direct examination of Lowel-McDowell on various different grounds. At one point during a sidebar outside the presence of the jury, the trial court had to calm the assistant State's Attorney down and instructed her to only make "one sentence objections." The court added that: "I know he's a *pro se* litigant and I can't control him, but I can control you. So don't ignite the situation." However, because defendant represented himself, the trial court gave him much more leeway in presenting his case. Because being represented by an attorney would have hindered defendant's ability to plead his case directly to the jury, there is no doubt that he made the decision to represent himself knowingly, intelligently and voluntarily. See *Wright*, 2017 IL 119561, ¶ 55 (finding the college-educated "defendant's decision to waive counsel was made freely, knowingly, and intelligently" where, although the trial court understated the maximum penalty by 15 years,

the defendant "expressed his desire to represent himself at the beginning of this case and reiterated that desire a number of times thereafter" due to speedy trial concerns "even after being informed by the trial court of the potential pitfalls of doing so").

¶ 44    Still, defendant highlights *People v. Campbell*, 224 Ill. 2d 80, 82 (2006), where a defendant had been charged with a Class A misdemeanor for driving with a suspended license. In the case, on the day of the defendant's trial, the trial court asked him if he had an attorney and whether he wanted an attorney. *Id.* After the defendant said no to both questions, the court immediately began his trial. *Id.* Our supreme court found a complete lack of compliance with Rule 401(a) because the trial court allowed the defendant to represent himself "without making any attempt to inform him of the nature of the charges, the range of possible penalties, or his right to counsel." *Id.* at 84. As such, the defendant's waiver of his right to counsel was invalid. *Id.* at 85. In contrast to *Campbell*, the trial court in this case repeatedly warned defendant of the potential pitfalls in representing himself and did admonish him before allowing him to represent himself, but overstated the maximum possible sentence, failed to inform him of the minimum possible sentence and initially failed to admonish him about his right to counsel. While the court in this case did not strictly comply with Rule 401(a), it nevertheless substantially complied with the rule unlike the complete lack of compliance with Rule 401(a) in *Campbell*. Consequently, defendant validly waived his right to counsel.

¶ 45                                III. CONCLUSION

¶ 46    For the foregoing reasons, we affirm the judgment of the circuit court of Cook County.

¶ 47    Affirmed.