No. 2--04--0931 filed June 30, 2006

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 03--DV--899 |
| JOHN J. DAVIT, | ) ) | Honorable Brian R. McKillip, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE HUTCHINSON delivered the opinion of the court:

Following a jury trial, defendant, John J. Davit, was convicted of resisting a peace officer (720 ILCS 5/31--1 (West 2002)) and violating an order of protection (720 ILCS 5/12--30 (West 2002)). He was sentenced to concurrent one-year terms of conditional discharge and 40 hours of public service, with an additional sentence of 48 hours' periodic imprisonment imposed on the resisting-a-peace-officer conviction. On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt of violating the order of protection. We agree with defendant and reverse his conviction of and sentence for violating the order of protection.

At trial, the State introduced into evidence a certified copy of an order of protection entered by the circuit court of Du Page County on June 5, 2002, and in effect until June 5, 2004. The order of protection prohibited defendant from having certain enumerated contacts with his former spouse, Cathy Davit, and their three minor children, Rebecca, Jessica, and Alexander. The order of

protection had been entered as part of defendant and Cathy's dissolution of marriage proceeding and had been served on defendant. The order of protection stated: "[Cathy] is granted exclusive possession of the residence and [defendant] shall not enter or remain in the household of premises located at: 1923 Hillside Lane, Lisle, IL." The order of protection further required defendant to "stay away" from Cathy and the minor children, except that defendant was permitted to "exercise visitation as provided in the Judgment of Dissolution of Marriage." Cathy and defendant's dissolution judgment delineated the times that defendant could visit his children, but it did not indicate the location where the children would be picked up or returned.

Cathy Davit testified that, on May 22, 2003, at approximately 7:30 p.m., she was inside the house located at 1923 Hillside Lane. At this time, she observed defendant standing in the yard and their daughter Jessica standing on the driveway. Soon after observing defendant, Cathy saw a police car pull up to the house. She called out to Jessica, instructing her to come inside the house. Because Cathy believed that the encounter between defendant and the police officer would be confrontational, she escorted Jessica to the rear of the house, out of sight of defendant and the police officer. Five minutes later, the police officer came to Cathy's door and Cathy tendered a copy of the order of protection to the officer.

Officer Bowes testified that, on the night of the incident, he was initially dispatched to Surrey Ridge Park in Lemont. The officer soon learned that defendant, whom he knew from prior encounters, might be at Cathy's residence in Lisle, and he went to that address. Upon arriving at Cathy's house, Bowes, who was in uniform, saw defendant standing in the driveway with Jessica. Bowes testified that he believed that defendant was in violation of the order of protection, and he approached defendant and advised him that he was under arrest. Defendant became angry, and he

tried to push past Bowes and walk toward his own vehicle. A struggle ensued, and defendant was eventually handcuffed.

Defendant testified that on the night of May 22, 2003, he and Jessica went to soccer practice and then to Walgreens to purchase Gatorade and some "trinkets." Among the items they bought were reflectors for Jessica's bicycle. After leaving Walgreens, defendant took Jessica to Cathy's house, parking his car on the street. Because Jessica had a lot of things to take inside, such as her gym bag, balls, and the "trinkets" purchased at the store, defendant helped Jessica carry her belongings to the front door of Cathy's house. Defendant then offered to put the reflectors on Jessica's bike, which was lying on the driveway. As defendant and Jessica were sitting on the driveway installing the reflectors, a police officer pulled up to the house. Because the officer had a "mean look" on his face, defendant told Jessica to gather her stuff and go inside the house. Defendant then approached the officer and inquired why he was there. The officer advised defendant that he was under arrest, but the officer never told defendant the reason for the arrest. Defendant denied that he wrestled with the officer and that he tried to prevent the officer from handcuffing him.

On cross-examination, defendant admitted that he was aware of the order of protection. However, defendant did not believe that he was violating the order of protection, explaining that he had taken his daughter to soccer practice and brought her home on many occasions in the weeks preceding May 22, 2003.

The jury found defendant guilty of both resisting a peace officer and violating an order of protection, and defendant moved for a new trial. The trial court denied the motion and sentenced defendant. This timely appeal followed.

On appeal, defendant contends that he was not proved guilty beyond a reasonable doubt of violating the order of protection. Specifically, defendant claims that the order of protection prohibited him only from entering or remaining inside Cathy's house and that the evidence failed to establish that he entered Cathy's house at any point on May 22, 2003. Instead, defendant argues that the evidence established that he remained outside the house at all times.

When faced with a challenge to the sufficiency of the evidence, we inquire whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt. People v. Ehlert, 211 Ill. 2d 192, 202 (2004). We will reverse a conviction only if the evidence is so unreasonable, improbable, or unsatisfactory as to justify a reasonable doubt of the defendant's guilt. People v. Taylor, 349 Ill. App. 3d 839, 844 (2004).

One commits the offense of violating an order of protection if: (1) he or she commits an act that was prohibited by a trial court in a valid order of protection entered pursuant to the provisions of the Illinois Domestic Violence Act of 1986 (the Domestic Violence Act) (750 ILCS 60/214 (West 2002)), and (2) such act occurs after the offender has been served notice of the contents of the order or otherwise has acquired knowledge of the contents of the order. 720 ILCS 5/12--30 (West 2002); People v. Stiles, 334 Ill. App. 3d 953, 957 (2002). The offense of violating an order of protection is not a strict liability offense, and the State is required to prove both actus reus, a guilty act, and mens rea, a guilty mind. Stiles, 334 Ill. App. 3d at 956-57; People v. Mandic, 325 Ill. App. 3d 544, 549-50 (2001).

In the instant case, it is undisputed that defendant had been served and had notice of the contents of the order of protection entered against him. The question on appeal is whether the State proved beyond a reasonable doubt that defendant intentionally committed an act prohibited by the

order of protection. The portion of the order of protection that defendant was charged with violating prohibited defendant from entering or remaining "in the household of premises located at: 1923 Hillside Lane, Lisle." Defendant argues that the plain meaning of this language was that he was prohibited him from entering or remaining inside Cathy's house. Defendant further argues that the order did not prohibit him from walking onto the lot upon which the house stood. Defendant notes that the order of protection specifically granted him the right to exercise visitation with his children, and he argues that his presence on Cathy's yard was necessary so that he could pick up and drop off his children. The State responds that the plain language of the order of protection prohibited him from entering Cathy's house, as well as the lot upon which the house stood.

Initially, we must determine the appropriate rule of construction that governs our analysis in the instant case. The State asserts that violating an order of protection is a form of criminal contempt and that the application of strict-statutory-construction principles to interpret the order of protection would be improper. Instead, the State suggests the application of the rule of construction applied in contempt proceedings; applying this rule of construction, we would interpret the language of the trial court's order by considering the context in which the order was issued and the purpose for which the order was requested. Doe v. Lutz, 253 Ill. App. 3d 59, 64 (1993). The State asserts that the appropriate inquiry is whether, under the entirety of the circumstances, the defendant had actual or constructive knowledge of what conduct was prohibited and whether the court's order "was so uncertain as to make it incomprehensible." Doe, 253 Ill. App. 3d at 65; see Kaeding v. Collins, 281 Ill. App. 3d 919, 924 (1996).

In presenting this argument, the State fails to recognize that this case did not arise from a contempt proceeding initiated against defendant and that this appeal was not filed from a judgment finding defendant in contempt. Although the order of protection provided that "[a]ny wilful

violation of [the] order is contempt of court," the State did not choose to seek to have defendant found in contempt of court. Instead, the State initiated a separate criminal proceeding, charging defendant with the misdemeanor offense of violating an order of protection (see 720 ILCS 5/12--30 (West 2002)). While proceedings for criminal contempt are governed by the same due process rights applicable in criminal proceedings (Luttrell v. Panozzo, 252 Ill. App. 3d 597, 601 (1993)), the proceedings are nonetheless distinct and arise out of different branches of government (In re G.B., 88 Ill. 2d 36, 41 (1981)).

In this case, the State initiated a criminal proceeding alleging the violation of a criminal statute enacted by the legislature. Section 12--30 of the Criminal Code of 1961 provides that one commits the offense of violation of an order of protection if "[h]e or she commits an act which was prohibited by a court." 720 ILCS 5/12--30 (West 2002). Through this language, the statute incorporates by reference a trial court's order as an element of the offense. In essence, the trial court's order becomes a part of the statutory language defining the offense of violating an order of protection. Indeed, we note that the trial court's order here is patterned upon language from section 214 of the Domestic Violence Act, which enumerates the remedies that may be included in an order of protection. See 750 ILCS 60/214(b)(2) (West 2002) (authorizing the trial court to grant petitioner exclusive possession of residence and to prohibit respondent "from entering or remaining in any residence or household of the petitioner"). Accordingly, in construing the language of the order of protection, we will apply the strict-statutory-construction principles that govern the interpretation of all legislative enactments, rather than apply the principles that govern contempt proceedings.

Applying strict-statutory-construction principles, we construe the order of protection by giving effect to its plain language and enforcing the order as written. People v. Jameson, 162 Ill. 2d 282, 287-88 (1994). However, if the language contained in the order of protection reasonably can be

interpreted in two different ways, it is ambiguous. People v. Wanke, 311 Ill. App. 3d 801, 807 (2000). In a criminal context, when the reviewing court is presented with ambiguous language to enforce, the principle of lenity is applied. Wanke, 311 Ill. App. 3d at 807. Under this principle, the language in the order of protection must be strictly construed in favor of the accused. Wanke, 311 Ill. App. 3d at 807.

As noted above, the trial court's order of protection provided that defendant "shall not enter or remain in the household of premises located at: 1923 Hillside Drive, Lisle." (Emphasis added.) The precise meaning of this emphasized language is not immediately apparent to us. Reference to the definitions of the terms used in the order does not clarify the order's meaning. The word "enter" is defined as "to come or go into." Black's Law Dictionary 572 (8th ed. 2004). The word "household" is defined as a "family living together" or "a group of people who dwell under the same roof." Black's Law Dictionary 756 (8th ed. 2004). The word "premises" is defined as "a house or building, along with its grounds." Black's Law Dictionary 1219 (8th ed. 2004). As noted by the parties, applying these definitions, the literal meaning of the language in the order was that defendant was prohibited from going into the family of Cathy's property. Such an interpretation, however, was surely not intended by the trial court.

As already noted, the parties offer two different interpretations of the language of the order. Defendant argues that the order prohibited him from entering into Cathy's house on the premises located at 1923 Hillside Drive. Defendant thus argues that his presence upon Cathy's driveway and yard on the date in question did not constitute a violation of the order of protection, because he did not enter into Cathy's house. Defendant argues that, in using the word "household," the trial court intended "house" or "residence." See 750 ILCS 214(b)(2) (West 2002) (authorizing the trial court to prohibit respondent "from entering or remaining in any residence or household of the petitioner").

Defendant further argues that, if the trial court had intended to prohibit his presence on Cathy's real property, it would have prohibited him from entering "onto" the premises rather than from entering or remaining "in the household of premises." The State argues that the order prohibited defendant from entering into Cathy's house <u>or</u> upon the real property upon which her house stood. The State suggests the possibility that the use of the word "of" between the words "household" and "premises" was a drafting error and that the trial court intended to prohibit defendant from entering or remaining "in the household <u>or</u> premises" located at 1923 Hillside Drive.

Given the plain language of the order, we cannot say that the interpretation presented by either party is unreasonable. As already noted, if the order of protection reasonably can be interpreted in two different ways, it is ambiguous and must be construed in favor of the accused. <u>Wanke</u>, 311 Ill. App. 3d at 807. Here, the language of the order is not clear and unambiguous as applied to the facts. As to this point, all of the members of the panel are in agreement, as the dissent acknowledges that the "provision here is ambiguous." Slip op. at 14. Unlike the dissent, however, we believe that the principle of lenity must be applied, given that defendant was convicted of violating a criminal statute and punished according to a statutory sentencing code. As explained by our supreme court, the doctrine of lenity is a well-settled principle of law, which requires:

> "[A] criminal or penal statute is to be strictly construed in favor of an accused, and nothing is to be taken by intendment or implication against him beyond the obvious or literal meaning of such statutes. [Citations.] This is so *** because 'the penal law is intended to regulate the conduct of people of all grades of intelligence within the scope of responsibility,' and it is therefore 'essential to its justice and humanity that it be expressed in language which they can easily understand and comprehend; that it be held obligatory only in the sense in

which all can and will understand it.' " People v. Eagle Food Centers, Inc., 31 Ill. 2d 535,

539 (1964), quoting 2 Sutherland on Statutory Construction §520.

Here, as discussed above, the language of the order of protection was not easy to understand or

comprehend and did not convey a singular meaning to all individuals. Under such circumstances,

"justice and humanity" compel the application of the doctrine of lenity. Applying the doctrine of

lenity to the instant case, we must interpret the order in defendant's favor and conclude that the order

prohibited entry only into Cathy's house and did not prohibit defendant's presence upon Cathy's

driveway or yard.

The dissent suggests that any ambiguity in the order of protection "vanishes" when the order

is read as a whole. Slip op. at 14-15. The dissent suggests that a reading of the entire order of

protection demonstrates that the trial court intended to "prohibit[] defendant's entry onto Cathy's

land." Slip op. at 14. The dissent also posits that clarity may be gleaned from the context in which

the order was entered, as well as consideration of other parts of the record, including the pleadings,

motions, and issues to be decided. See slip op. at 13. Although perhaps such aids to interpretation

would be useful had we been called upon to determine whether the trial court properly enforced its

own order in a contempt proceeding, they have no place in determining whether the State proved

beyond a reasonable doubt to an independent finder of fact that defendant was guilty of a criminal

offense by violating the portion of the order of protection prohibiting him from entering or

remaining "in the household of premises." At the close of trial, the court did not instruct the jury to

consider the entire order of protection to determine whether defendant had violated it. The jury was

also without the benefit of other materials appearing in the court file, such as pleadings and motions,

to determine the meaning of the order. Instead, the trial court simply instructed the jury that, to

sustain the criminal charge of violation of an order of protection, the State was obligated to prove

that "defendant entered or remained in the household of premises of Cathy Davit located at 1923 Hillside Lane, Lisle, IL." For these reasons, we disagree with the dissent's analysis, and we will not look beyond the language of the specific provision of the order of protection that defendant was charged with violating.

As already noted, applying the doctrine of lenity, we must interpret the language of the order of protection in favor of defendant. Applying such an interpretation, we have concluded that the order prohibited entry only into Cathy's house and did not prohibit defendant's presence upon Cathy's driveway or yard. Because the State failed to present any evidence that defendant entered into Cathy's house, we conclude that the evidence was so unsatisfactory as to justify a reasonable doubt of defendant's guilt. See Taylor, 349 Ill. App. 3d at 844. Accordingly, we reverse defendant's conviction of and sentence for the offense of violating an order of protection.

In so holding, we reject the State's reliance upon the provision of the order of protection that required defendant to "stay away" from Cathy and the minor children. The State argues that defendant's "approach to the house" as he dropped off his daughter constituted a violation of the "stay away" provision. We reject this argument for two reasons. First, defendant was not charged with a violation of the "stay away" provision of the order of protection, and the jury was not instructed on this theory. Second, the "stay away" provision of the order of protection contained an exception that permitted defendant to exercise visitation with his minor children as provided for in the dissolution judgment. At trial, defendant testified that he believed that it was permissible for him to go onto the property for the purpose of picking up and dropping off his children during visitation. Defendant testified that he had been picking up his daughter from Cathy's house in this manner on a weekly basis and that "it's never been a problem." In light of these circumstances, even if defendant's conduct constituted a violation of the "stay away" provision, we believe that the State

˘10˘

would have difficulty in proving the necessary <u>mens rea</u> to obtain a conviction. See <u>Mandic</u>, 325 Ill. App. 3d at 550 (noting that the State must prove that defendant intended to violate the "stay away" provision of an order of protection).

We also note that our decision to reverse defendant's conviction of violating the order of protection is not altered by the presence of language in the order that the "[g]rant of exclusive possession of the residence or household shall constitute notice forbidding trespass to land." The purpose of this language is to satisfy the element of "notice" contained within the offense of criminal trespass to real property. See 720 ILCS 5/21--3(a)(2) (West 2002) (prohibiting entry "upon the land of another, after receiving, prior to such entry, notice from the owner or occupant that such entry is forbidden"). Therefore, had the State chosen to charge defendant with the offense of criminal trespass to real property, this language in the order of protection would have proven the element of notice. However, defendant was not charged with the offense of criminal trespass to land. Instead, he was charged with the offense of violating an order of protection that prohibited his entry "in the household of premises located at: 1923 Hillside Lane, Lisle." As already discussed, we do not believe that this language unambiguously prohibited defendant's entry onto the land upon which Cathy's house stood.

Finally, we note that the language contained in the order of protection prohibiting defendant from entering or remaining "in the household of premises" was contained within a form order circulated by the circuit clerk of Du Page County. In light of our conclusion that this language contained in the form order is ambiguous, amending the form order is advisable to avoid similar confusion by law enforcement and other parties in the future.

Because defendant raises no contention of error relating to his conviction of resisting a peace officer (720 ILCS 5/31--1 (West 2002)), we affirm his conviction and sentence as to that offense.

For the foregoing reasons, the judgment of the circuit court of Du Page County is affirmed in part and reversed in part.

Affirmed in part and reversed in part.

McLAREN, J., concurs.

JUSTICE CALLUM, dissenting:

In my view, the majority commits two errors. First, it applies the principles of statutory construction to the interpretation of what is clearly not a statute. Second, even if those principles actually apply, the majority summarily invokes the principle of lenity while ignoring other principles that convincingly establish that the order of protection was intended to prohibit defendant's entry onto Cathy's land. Accordingly, I respectfully dissent.

At the risk of stating the obvious, a court order is not a statute. I do not deny that, in defining the offense of violating an order of protection, section 12--30 of the Criminal Code of 1961 (720 ILCS 5/12--30 (West 2002)) makes reference to a court order; after all, prohibiting the violation of a court order without referring to a court order would be a difficult task indeed. This does not mean, however, that the court order becomes a part of the statute and thereby subject to the rules of statutory construction.

As the State points out, a court order is subject to its own rules of construction. "In determining whether there has been a violation of a court order, the order must be construed with reference to the context in which it was issued and the purpose for which it was requested." Doe v. Lutz, 253 Ill. App. 3d 59, 64 (1993). The order "is to be interpreted in its entirety, taking into consideration other parts of the record, including the pleadings, the motions before the court, and the issues to be decided. [Citations.] [The] order should be construed reasonably so as to give effect to the discernable intent of the court." People v. Ryan, 259 Ill. App. 3d 611, 613 (1994).

The majority asserts that these rules do not apply here because defendant was not found in contempt of court but rather was found in violation of section 12--30. I do not understand the difference that makes. No matter the nature of the proceedings, the issue is the interpretation of a court order, not a statute. Accordingly, I submit that we should invoke the rules that apply to the interpretation of a court order, not those that apply to the interpretation of a statute.

That said, the distinction makes little difference in this instance. The primary objective in interpreting anything is to ascertain the intent of its creator. See People v. Collins, 214 Ill. 2d 206, 214 (2005) (statute); Ryan, 259 Ill. App. 3d at 613 (court order). As noted, when the thing is a court order, we must consider it in its entirety and in context to determine the intent of the court. However, when the thing is a statute, and when the provision at hand is ambiguous, we must do the same. That is, we must read in pari materia all the parts of the statutory scheme, to ascertain the intent of the legislature and thereby avoid injustice. See Kousins v. Anderson, 229 Ill. App. 3d 486, 492 (1992). I do not deny that, at least for our purposes, the provision here is ambiguous.[1] Thus, whether we interpret this court order as a court order or as a statute, we must determine the court's intent by reading the order as a whole.

---

[1] I say "at least for our purposes" because I share the State's suspicion that the phrase "household of premises" was merely a drafting error. I am highly inclined to think that the form order used here was intended to state "household or premises," which is a common phrase in orders of protection. See, e.g., People v. Priest, 297 Ill. App. 3d 797, 800 (1998). However, I do not propose to substitute my personal suspicion for established rules of construction, and I join in the majority's suggestion that the circuit clerk amend the form to reflect whatever was intended.

In reading the order as a whole, there is no doubt that the court prohibited defendant's entry onto Cathy's land. The order granted Cathy the exclusive possession of the residence, and it stated that the grant of such possession "constitute[d] notice forbidding trespass to land." I understand that defendant was not charged with trespass to land. Nevertheless, the order informed defendant that his entry onto the land was forbidden. Thus, while "household of premises" is ambiguous as to whether defendant was prohibited from entering the house, the land, or both, that ambiguity vanishes when the order is read as a whole. Because the order otherwise prohibited defendant's entry onto the land, defendant could not have reasonably interpreted "household of premises" to <u>allow</u> his entry onto the land. Such an interpretation clearly contravenes the court's intent.

Needless to say, the majority does not read the order as a whole. Instead, it reads "household of premises" in a vacuum and summarily applies the principle of lenity. I first note that, on this point, the question of which rules of construction we apply might matter a great deal; although lenity certainly applies to the interpretation of a criminal statute, it does not necessarily apply to the interpretation of a court order. <u>Cf.</u> <u>In re Detention of Powell</u>, 217 Ill. 2d 123, 142 (2005) (questioning its application to a statute that is "civil in nature"). However, assuming that it does apply here, either because it applies generally to court orders or because the majority properly invokes the rules of construction of criminal statutes, "[i]t is well settled that this rule does not require a court to construe a statute 'so rigidly *** as to defeat the intent of the legislature.' " <u>Powell</u>, 217 Ill. 2d at 142, quoting <u>People v. Washington</u>, 343 Ill. App. 3d 889, 903 (2003). In my view, the majority does exactly this. It reflexively adopts the lenient interpretation of "household of premises" when the application of other principles of construction, namely the rule that we must resolve the ambiguity by reading the order as a whole, convincingly establish the opposite intent.

Here, defendant entered onto Cathy's land. He asserted that he did so to return Jessica and her many belongings at the end of a visitation. Doing so was not unreasonable, and arguably the order of protection allowed his entry for that limited purpose. However, he did more than that. According to his own testimony, he then decided to sit in Cathy's driveway, putting reflectors on Jessica's bicycle. In light of what I consider the proper interpretation of the order of protection, the jury was entitled to determine that defendant intentionally violated it.

I would affirm defendant's conviction of violating an order of protection.