**NOTICE:** This order was filed under Illinois Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

2025 IL App (3d) 240709-U

Order filed August 28, 2025

_____

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2025

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-24-0709 Circuit No. 23-DV-1410 |
| MAREK A. FIL, | ) ) ) | Honorable Robert A. Miller, |
| Defendant-Appellant. | ) | Judge, Presiding. |

_____

JUSTICE BERTANI delivered the judgment of the court.
Justice Holdridge concurred in the judgment.
Justice Hettel dissented.

_____

**ORDER**

¶ 1     *Held*:   The evidence was insufficient to prove defendant knowingly violated an order of protection.

¶ 2     Defendant, Marek A. Fil, appeals his conviction for violating an order of protection, arguing the State failed to prove beyond a reasonable doubt that he intentionally violated the order. We reverse.

¶ 3                                    I. BACKGROUND

¶ 4    Defendant was charged with violating an order of protection (720 ILCS 5/12-3.4(a)(1) (West 2022)). Relevant to this appeal, the charge alleged that defendant intentionally violated an order of protection, which he had knowledge of, by being present within 1,000 feet of his ex-wife, Aleksandra Kopec, on September 6, 2023.

¶ 5    The matter proceeded to a bench trial. The parties stipulated that an order of protection had been previously issued requiring defendant to stay at least 1,000 feet away from Kopec and that defendant had knowledge of the order. The parties further stipulated that a provision in the order barring defendant from Kopec's workplace, the Du Page County circuit court clerk's office, had been subsequently clarified by the issuing judge to allow defendant, as a *pro se* litigant in the parties' ongoing divorce proceedings, to conduct court business within the circuit clerk's office if escorted by a county deputy.[1]

¶ 6    Kopec testified that on September 6, 2023, at approximately 3:10 p.m., as Kopec sat inside her vehicle while parked in the courthouse parking garage, she saw defendant's truck drive through the empty parking space next to her vehicle. She did not see defendant during the estimated 10 seconds it took for the truck to pass her vehicle. Kopec stated that the truck slowed down as it passed through the parking space but did not stop. Kopec indicated that the truck was traveling in the proper direction through the garage prior to entering the adjacent parking space but had exited the space into the traffic lane going the wrong direction. After passing her vehicle, the truck immediately left the parking garage. Video surveillance from the parking garage demonstrated that defendant's truck exited the garage less than two minutes after it had entered.

---

[1]We reject defendant's contention that the doctrine of lenity is applicable here because the clarification allowing him access to the circuit clerk's office created ambiguity by modifying the stay-away provision of the order of protection. Defendant was charged with violating the order based on a separate and unambiguous provision ordering that he remain at least 1,000 feet away from Kopec at all times.

¶ 7        Officer Jerry Hampel of the Wheaton Police Department testified that he spoke with Kopec on September 6, 2023, after Kopec called 911 to report an incident. After speaking with Kopec, Hampel communicated with defendant via telephone. Hampel's conversation with defendant was conducted in Polish, after Hampel noticed that defendant was having difficulty communicating in English. Defendant initially told Hampel he went to the courthouse to file paperwork that morning. After Hampel informed defendant that court records revealed he had not filed any paperwork that day, defendant stated he drove through the parking garage that afternoon but left before he could enter the courthouse. Hampel confirmed that on the same date, he received an image from defendant depicting the petition defendant claimed he had intended to file. The petition was dated September 6, 2023, and requested permission for defendant to bring a laptop and cell phone into the courtroom during an upcoming proceeding in the divorce case on September 25, 2023. The petition was filed on September 13, 2023.

¶ 8        Defendant's former girlfriend, Kathy Polinska, testified that on September 6, 2023, defendant had been preparing a court document at his house. They both left the house shortly before 3 p.m., with defendant indicating he was heading to the courthouse. At approximately 3 p.m., Polinska called defendant for assistance because her vehicle had stalled on the roadway, and she knew the courthouse was nearby. Defendant had indicated that he had just arrived at the parking garage when she called. Defendant agreed to help her and left the parking garage. After fixing Polinska's vehicle, defendant went home to clean up and change his clothes before he headed back to the courthouse in his other vehicle.

¶ 9        Defendant testified with the assistance of a Polish language interpreter. He indicated that, as a *pro se* litigant, he regularly frequented the courthouse to file paperwork and conduct research in the law library. Defendant used the parking garage when visiting the courthouse because a judge

had informed him it was a safe place to park due to the presence of security cameras. When defendant initially went to the courthouse to file his petition on September 6, he did not see Kopec or her vehicle, which he could only recognize by its front headlights and under-hood illumination. He exited the parking garage almost immediately after entering in order to help Polinska. After fixing Polinska's vehicle, defendant went home to clean up and change his clothes before he returned to the courthouse in his other vehicle. When defendant returned to the courthouse, there were fewer vehicles parked in the garage, and he could see Kopec's vehicle as he entered. The front headlights of Kopec's vehicle were turned on and squad cars with activated emergency lights were parked nearby. Defendant indicated he was scared and left immediately.

¶ 10       In finding defendant guilty, the court stated:

> "I believe he may have gone to the courthouse to file the paperwork. I think in doing so he decided to drive around and check to see if her car was there. He took a chance that she wasn't there. He drove the car and went by her and saw that she was, in fact, in her car. He knew darn well it was her car.
>
> * * *
>
> *** When he came back *** later, that car was still in the same location. He said he noticed the police and that car as soon as he entered the parking garage ***. That car would have been at least four aisles away and all the way at the other end. So he took a chance when he went by the car the first time. He didn't think she was in there. She was, and he performed an action that was prohibited by the order of protection ***."

4

¶ 11 Defendant filed a motion for a new trial arguing, *inter alia*, that the State failed to prove his guilt beyond a reasonable doubt. After denying the motion, the court sentenced defendant to one year of court supervision and 78 hours of public service.

¶ 12                                    II. ANALYSIS

¶ 13 On appeal, defendant argues that the State failed to prove that he intentionally violated the order of protection. As a preliminary matter, we address the State's request to strike portions of defendant's brief (1) for citing case law that is unsupportive of the propositions asserted and (2) for including citations to two unpublished decisions—*People v. Spiess*, 2013 IL App (3d) 110860-U and *People v. Dunlap*, 2018 IL App (1st) 152390-U—and failing to provide mandated copies of these orders to the State.[2]

¶ 14 "[T]he striking of an appellate brief, in whole or in part, is a harsh sanction and is appropriate only when the alleged violations of procedural rules interfere with or preclude review." (Internal quotation marks omitted.) *In re Detention of Powell*, 217 Ill. 2d 123, 132 (2005). Here, the alleged violations raised by the State are not so egregious as to hinder our review of the issues and warrant striking portions of defendant's brief. To the extent that defendant may have relied on case law that fails to properly support his propositions, it is the function of this court to assess the merits of defendant's argument, and in proper consideration thereof, to determine whether the authority cited is relevant. See *In re M.M.*, 156 Ill. 2d 53, 56 (1993). As for defendant's use of unpublished citations, both *Spiess* and *Dunlap* were issued prior to January 1, 2021, and should not have been cited for any reason, as these decisions are nonprecedential. See Ill. S. Ct. R. 23(e)

---

[2]The State further contends it was not provided with a copy of another unpublished case cited by defendant—*People v. Troyer*, 2021 IL App (3d) 200323-U—but does not explicitly request to strike this citation. The State acknowledges that *Troyer* may be cited for persuasive purposes, as it was issued after January 1, 2021.

(eff. Feb. 1, 2023). However, as defendant merely references these cases as additional examples to accompany his citations to published opinions with precedential value, we will simply disregard his citations to *Spiess* and *Dunlap*. See *In re Marriage of Chapa*, 2022 IL App (2d) 210772, ¶ 24.

¶ 15 When presented with a challenge to the sufficiency of the evidence, a reviewing court must view the evidence and all reasonable inferences therefrom in the light most favorable to the State to determine whether any rational trier of fact could have found beyond a reasonable doubt the essential elements of the offense. *People v. Harvey*, 2024 IL 129357, ¶ 19. Under this standard of review, we will not substitute our judgment for that of the fact finder regarding the weight of the evidence or witness credibility. *People v. Jackson*, 232 Ill. 2d 246, 280-81 (2009).

¶ 16 To sustain defendant's conviction for violating an order of protection, the State was required to prove that defendant knowingly committed an act prohibited by the court. 720 ILCS 5/12-3.4(a)(1) (West 2022). It is undisputed that defendant was within 1,000 feet of Kopec when he drove past the vehicle she occupied inside the parking garage and that defendant was required to stay at least 1,000 feet away from Kopec pursuant to the order. Rather, defendant solely contends that the State failed to prove the knowledge element of the offense.

¶ 17 As violating an order of protection is not a strict liability offense, the State must prove both *actus reus*, a guilty act, and *mens rea*, a guilty mind. *People v. Davit*, 366 Ill. App. 3d 522, 525 (2006). Thus, aimless, unintentional, or accidental conduct does not constitute a violation of a stay-away order. *People v. Mandic*, 325 Ill. App. 3d 544, 549 (2001). The determination of whether a defendant intentionally violated a stay-away order by appearing in the same public place as a protected party is based on various factors, including "the size of the public area, the total number of people present, the defendant's purpose for being present, the length of time, and when the defendant knew or should have known that a protected party would be present." *Id.*

6

¶ 18       Here, the evidence failed to show defendant's conduct was intentional. The court found that defendant went to the courthouse for a legitimate purpose, to file paperwork. Although defendant drove closer to Kopec's vehicle than necessary when he cut through the adjacent open parking space, no evidence was presented to suggest that defendant knew Kopec would be inside the parking garage during the brief period of time that he was there. Further, the court concluded that defendant did not believe that Kopec was present when he passed her vehicle. See *People v. Gean*, 143 Ill. 2d 281, 288 (1991) ("Knowledge generally refers to an awareness of the existence of the facts which make an individual's conduct unlawful."). Defendant passed Kopec's vehicle within a matter of seconds and Kopec did not see defendant. Defendant made no attempt to interact with Kopec and immediately left the parking garage. Therefore, we find that defendant's conviction must be reversed, as the evidence was insufficient to prove beyond a reasonable doubt that defendant knowingly violated the protective order. See *People v. Reher*, 361 Ill. App. 3d 697, 702-03 (2005) (reversal of conviction warranted where evidence failed to demonstrate the defendant's brief encounter with a protected party at a retail store located near the protected party's home was intentional).

¶ 19                                   III. CONCLUSION

¶ 20       The judgment of the circuit court of Du Page County is reversed.

¶ 21       Reversed.

¶ 22       JUSTICE HETTEL, dissenting:

¶ 23       I respectfully dissent from the majority's determination that there was insufficient evidence to prove beyond a reasonable doubt that defendant knowingly violated the protective order in this case.

¶ 24    As the majority correctly articulates, "[k]nowledge generally refers to an awareness of the existence of the facts that make an individual's conduct unlawful." *Gean*, 143 Ill. 2d at 288. Specifically, section 4-5 of the Illinois Criminal Code defines "knowledge" as follows:

"A person knows, or acts knowingly or with knowledge of:

(a) the nature or attendant circumstances of his or her conduct, described by the statute defining the offense, when he or she is consciously aware that his or her conduct is of that nature or that those circumstances exist. Knowledge of a material fact includes awareness of the substantial probability that the fact exists.

(b) the result of his or her conduct, described by the statute defining the defense, when he or she is consciously aware that that result is practically certain to be caused by his conduct." 720 ILCS 5/4-5 (West 2022).

¶ 25    The majority cites to *Reher*, 361 Ill. App. 3d 697, to support its determination that the evidence failed to show that defendant had knowingly violated the protective order. In *Reher*, the circuit court entered a protective order that prohibited the defendant from harassing or coming into contact with the protected parties. *Reher*, 361 Ill. App. 3d at 698. Subsequently, the State filed an amended information that alleged that the defendant had intentionally violated the protective order by coming into contact with the protected parties. *Id*. at 698. Specifically, the amended information alleged that the defendant had verbally threatened the protected parties upon encountering them at a K-Mart store. *Id*.

¶ 26    On appeal from his conviction for violating the protective order, the defendant argued that the evidence was insufficient to sustain his conviction because it showed that his encounter with the protected parties was merely "coincidental." *Id*. at 700. In addressing the defendant's argument, the court in *Reher* weighed the five factors determining whether a defendant intentionally violates

a stay-away order by appearing in the same public place at the same time as a protected party. *Id*. at 701-03. Specifically, the court found that none of the facts relating to the first and second factors were revealed during the trial, but that "common sense" suggested that the space at the K-Mart store where the defendant and the protected parties encountered one another was not "particularly small or desolate." *Id*. Regarding the third and fourth factors, the court noted that uncontradicted evidence showed that the defendant was at the K-Mart store to shop, which was a legitimate purpose; that the defendant was present at the store for approximately only 20 minutes; and that the encounter between the defendant and the protected parties lasted a few seconds. *Id*. at 701-02. As to the fifth factor, the court stated that, "perhaps *most importantly*, the State presented no evidence that the defendant knew *or should have known* that [one of the protected parties] would appear at the store when she did." (Emphasis added.) *Id*. at 702. Based on the state of the evidence, the court ultimately concluded that the encounter between the defendant and the protected parties was a coincidence and that the State failed to prove the defendant guilty beyond a reasonable doubt of intentionally violating the protective order. *Id*. at 702-03.

¶ 27    Like the court in *Reher*, the majority in this case correctly notes, relevant to the third factor, that the circuit court found that defendant had visited the courthouse for the legitimate purpose of filing paperwork. I also agree with the majority's finding, related to the fourth factor, that defendant was present inside the parking garage for only a brief period of time. However, I disagree with the majority's limited analysis as to the fifth factor.

¶ 28    Although, as the majority points out, the circuit court found that defendant did not believe that Kopec was present inside her vehicle when he drove past, this finding only goes to defendant's actual knowledge of whether he was violating the protective order. However, as the majority itself seems to note without analyzing, defendant could have still exhibited the requisite mental state to

9

support his conviction if he nevertheless *should have known* that Kopec was present when he drove past her vehicle and that he was consequently violating the protective order. See *id.* at 701 (stating that whether the defendant should have known that the protected party would be present is relevant to the determination of whether the defendant intentionally violated the stay-away order by being present at the same time as the protected party in a public place); 720 ILCS 5/4-5 (West 2022) (explaining that a defendant acts with knowledge of the attendant circumstances of his or her conduct if he or she is aware of the substantial probability that a material fact exists).

¶ 29　　　I find that there was ample evidence presented at trial from which the circuit court could have reasonable determined that defendant should have known that Kopec was present when he drove past her vehicle and that he was violating the protective order at that time. First, Kopec testified that the parking lot in which defendant drove past her was within the Du Page County building complex, which included the Du Page County circuit court clerk's office, where she worked at the time. This testimony was uncontradicted and defendant himself testified that he was aware that Kopec worked at the Du Page County courthouse.

¶ 30　　　Second, Kopec also testified that the September 6 incident occurred at approximately 3:10 p.m., prior to when the Du Page County circuit court clerk's office closed. Although the evidence did not reveal whether defendant knew the operating hours of the office or that it was open when he drove through the parking garage on September 6, common sense dictates that it is not unusual for any governmental office to be open at this time of day.

¶ 31　　　Third, although the circuit court acquitted defendant of the charges related to the alleged August 31 incident, it nevertheless credited Kopec's testimony that defendant drove through the parking lot that day and believed that he did so because he was looking specifically for Kopec's vehicle. The court also found that, on September 6, defendant again drove around the parking

10

garage to look for Kopec's vehicle. That the court believed that defendant had previously sought out Kopec's vehicle on August 31 increases the reasonableness of the court in turn believing that defendant again sought out Kopec's vehicle on September 6.

¶ 32      Fourth, the court discredited defendant's testimony that he did not recognize Kopec's vehicle when he drove past it in the parking garage on September 6 and found, to the contrary, that "[h]e knew darn well it was her car." The court also stated that it believed that "he took a chance when he went by [Kopec's] car the first time" and that he did not know whether she was inside her vehicle, but found that he still later returned to the parking garage where he earlier saw her vehicle.

¶ 33      Based on the available evidence and the court's credibility determinations and findings, I find that it was reasonable for it to have determined that, even if defendant did not actually know that Kopec was present when he drove past her vehicle on September 6, he at least should have known that she was present. Thus, I would affirm defendant's conviction for knowingly violating the protective order.