NOTICE
This Order was filed under
Supreme Court Rule 23 and is
not precedent except in the
limited circumstances allowed
under Rule 23(e)(1).

2025 IL App (4th) 241582-U

NO. 4-24-1582

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 11, 2025
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| Plaintiff-Appellee, | ) | Circuit Court of |
| v. | ) | Tazewell County |
| BRADLEY J. TUCEK, | ) | No. 24CM99 |
| Defendant-Appellant. | ) | |
| | ) | Honorable |
| | ) | Stephen A. Kouri, |
| | ) | Judge Presiding. |

JUSTICE ZENOFF delivered the judgment of the court.
Justices DeArmond and Cavanagh concurred in the judgment.

**ORDER**

¶ 1    *Held*: The appellate court reversed defendant's conviction where the State did not prove beyond a reasonable doubt that defendant knowingly violated an order of protection.

¶ 2    On November 12, 2024, a jury found defendant, Bradley J. Tucek, guilty of violating an order of protection (720 ILCS 5/12-3.4(a)(1) (West 2024)). Defendant agreed to a sentence of 70 days in county jail, with credit for time served, and fines and assessments. He appeals, arguing that the State failed to prove his guilt beyond a reasonable doubt and his trial counsel was ineffective for failing to file a waiver for the imposed assessments. For the following reasons, we reverse defendant's conviction.

¶ 3                                I. BACKGROUND

¶ 4    On February 23, 2024, the State filed an information alleging that defendant intentionally violated an order of protection (720 ILCS 5/12-3.4(a)(1) (West 2024)) when, on

February 22, 2024, he "went to the protected residence."

¶ 5		A jury trial began on November 12, 2024. The following evidence was presented.

¶ 6		Defendant lived with Holly Wheeler, who was his girlfriend or fiancée, and her father, Lester Wheeler, in an apartment in Pekin, Illinois. On February 20, 2024, Lester filed a petition for an emergency order of protection against defendant, which the trial court granted *ex parte* the same day. In section 1 of the order, the court stated that defendant "shall not threaten," harass, physically abuse, stalk, or interfere with the personal liberty of Lester. In section 2, titled "Possession of Residence," the court ordered that "[Lester] is granted exclusive possession of the residence and [defendant] is ordered not to stay or be at the residence." There was additional language in this section of the order indicating that "[t]hese remedies do not affect who owns the property, only who gets to use or occupy" it. Lastly, in section 3, the court ordered that:

> "Respondent shall not have any communication with Petitioner
>
> Respondent shall stay away from Petitioner at all times
>
> Respondent shall stay at least 300 feet away from Petitioner at all times
>
> 		***
>
> Respondent shall not be at or stay at any of these places while Petitioner is there:
>
> 		* * *
>
> HOME, [Lester's address], Pekin IL ***
>
> ANY AND ALL LOCATIONS,… IL
>
> Respondent shall have the right to enter the residence listed in Section 2 *only one time* to retrieve the property listed in Section 10 of this order, but only in the presence of:
>
> law enforcement" (Emphasis in original.)

¶ 7        Samuel Armstrong of the Tazewell County Sheriff's Office certified that he served the emergency order of protection on defendant on February 20, 2024, at 6:45 p.m. Armstrong testified that when he serves someone with an order of protection, he "usually [went] over it with them." When he served defendant with the order, Armstrong informed defendant that he was no longer allowed to live at Lester's residence and read to him "the boxes that were check marked" on the order of protection. However, Armstrong testified that he could not recall if he explained the order in his own words.

¶ 8        Nicholas Appell, a police officer with the City of Pekin, testified that he was on duty on February 22, 2024, and was dispatched to Lester's residence. The trial court admitted Appell's body camera footage on the State's motion and without objection. The footage showed that when he arrived at Lester's address, Appell initially approached defendant, who was standing in front of the neighboring apartment building. Appell then turned and approached Lester, who was standing across the street, in defendant's line of sight. Lester informed Appell that he called the police because "that guy standing over there is not supposed to be on my property." Appell and Lester then crossed the street to Lester's property, where Lester's car appeared to be parked with its trunk open. Appell then approached defendant, who had moved to stand in front of the door to Lester's apartment. Defendant explained that "the girl inside," Holly, "told [him] to come here." Appell could not recall if he could see Lester when he was standing in front of the apartment talking to defendant.

¶ 9        Neither Holly nor defendant knew who called the police or why. Holly then said, "[M]y dad's not here though, so. Right? Is he here?" She clarified that Lester was her father. Lester then approached the apartment door and told Holly that he did not call the police. Lester said to defendant, "[Y]ou're gonna have to get off my property." Defendant began to leave, but Appell

stopped him and told him that he was not free to go. Appell then arrested defendant for violating the order of protection.

¶ 10 Defendant testified that he was served with the order of protection, but the officer did not explain it in detail. He stated that the officer did not read him any of the specific sections. Defendant explained that it was his understanding that he could not be within 300 feet of Lester and "couldn't be at the house" or "inside the house" while Lester was there. He believed that the language stating that he could not "stay there or be at the residence" meant that he could not be inside the residence. Defendant testified that on February 22, 2024, he went near but did not enter the residence where Holly lived. When he arrived, he observed that Lester was not at the residence because his car was not parked there. However, defendant testified that Lester then "pulled up, but I was waiting for my fiancée *** to finish up what she was doing so we could both take off." He explained that he did not see Lester arrive and he was not able to see his car from where he was standing in front of the apartment. He said he only saw Lester after the police arrived.

¶ 11 Both parties then presented closing arguments. The State asserted that the order of protection unambiguously prohibited defendant from being either present at Lester's residence or near Lester and it was irrelevant whether defendant knew Lester was present at the property when he was not allowed to be there in the first place. Defense counsel, in turn, argued that the order of protection was ambiguous because section 2 "can be interpreted in a way that means [defendant] can't live there," while section 3 "says he can't be there while [Lester] is there." Because it was ambiguous, it must thus be interpreted according to the rule of lenity in defendant's favor. Defendant believed that he was allowed to be at the residence while Lester was not present and that Lester was not there on February 22, 2024; thus, he did not knowingly violate the order of protection.

- 4 -

¶ 12    The jury was instructed:

"To sustain the charge of violation of an order of protection, the State must prove the following propositions:

*First Proposition*: That the defendant went to [Lester's address] in Pekin, Illinois; and

*Second Proposition*: That an order of protection prohibited the defendant from performing that act; and

*Third Proposition*: That the order of protection was in effect at the time the defendant went to [Lester's address] in Pekin, Illinois; and

*Fourth Proposition*: That at the time the defendant went to [Lester's address] in Pekin, Illinois, he had been served notice of the contents of an order of protection or otherwise had acquired actual knowledge of the contents of the order."

The jury found defendant guilty of violating the order of protection.

¶ 13    The trial court held a sentencing hearing on December 12, 2024. The court indicated that defendant agreed to a sentence of 70 days in the county jail, with credit for 35 days served, along with "fines and costs as set forth in the paperwork." The court admonished defendant and accepted defendant's agreement to the sentence. The court's written order showed that the balance of fines and assessments was $909.50.

¶ 14    This appeal followed.

¶ 15                                    II. ANALYSIS

¶ 16    On appeal, defendant argues that (1) the evidence was insufficient to prove beyond a reasonable doubt that he knowingly violated the order of protection, as the language of the order was ambiguous as to whether he was allowed to be at the residence while Lester was not present,

and (2) defendant's trial counsel was ineffective for failing to file a certification for the waiver of court assessments. The State responds that (1) the order of protection unambiguously prohibited defendant from being at the residence, regardless of Lester's presence, and (2) defendant's trial counsel was not ineffective where defendant agreed to the sentence and payment of fines and assessments.

¶ 17　　　　When a defendant challenges the sufficiency of the evidence, we must determine whether, after viewing the evidence in the light most favorable to the State, any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *People v. Gray*, 2017 IL 120958, ¶ 35. "A criminal conviction will not be set aside on a challenge to the sufficiency of the evidence unless the evidence is so improbable or unsatisfactory that it creates a reasonable doubt of the defendant's guilt." *People v. Jackson*, 2020 IL 124112, ¶ 64.

¶ 18　　　　It is the function of the trier of fact to determine the credibility of the witnesses, assess the weight given to their testimony, resolve conflicts in the evidence, and draw reasonable inferences from that evidence. *People v. Baker*, 2022 IL App (4th) 210713, ¶ 35. These credibility determinations are entitled to great weight. *Baker*, 2022 IL App (4th) 210713, ¶ 35. In contrast, "[i]t is not the function of the reviewing court to retry the defendant," and thus, an appellate court will not "substitute its judgment for that of the trier of fact on issues involving the weight of the evidence or the credibility of witnesses." *Jackson*, 2020 IL 124112, ¶ 64.

¶ 19　　　　A person "commits violation of an order of protection if *** [h]e or she knowingly commits an act which was prohibited by a court *** in violation of *** a remedy in a valid order of protection" and "[s]uch violation occurs after the offender has been served notice of the contents of the order." 720 ILCS 5/12-3.4(a) (West 2024). Importantly, "[t]he offense of violating an order

of protection is not a strict liability offense, and the State is required to prove both *actus reus*, a guilty act, and *mens rea*, a guilty mind." *People v. Davit*, 366 Ill. App. 3d 522, 525 (2006).

¶ 20    Here, defendant does not dispute that he was served notice of the contents of the order of protection and that he was prohibited from being on Lester's property while Lester was present. The question on appeal is whether the State proved beyond a reasonable doubt that defendant intentionally committed an act prohibited by the order of protection when he was at the property and believed Lester was not present. Defendant asserts that the order of protection was ambiguous, as there is a conflict between the section ordering defendant "not to stay or be at the residence" and the section establishing that defendant "shall not be at or stay at [Lester's property] while [Lester] is there." As a result, defendant contends that the State had to prove that he knew that Lester was present at the property. On the other hand, the State argues that the order unambiguously prohibited defendant from being at the property at all, and thus, defendant's knowledge of Lester's presence was irrelevant.

¶ 21    In *Davit*, the Second District applied "strict-statutory-construction principles" when interpreting an order of protection, finding that section 12-30 of the Criminal Code of 1961 (720 ILCS 5/12-30 (West 2002)) "incorporates by reference a trial court's order as an element of the offense," and thus, "the trial court's order becomes a part of the statutory language defining the offense of violating an order of protection." *Davit*, 366 Ill. App. 3d at 526-27. Under those principles, "if the language contained in the order of protection reasonably can be interpreted in two different ways, it is ambiguous," and if it is ambiguous, "the principle of lenity is applied," and "the language in the order of protection must be strictly construed in favor of the accused." *Davit*, 366 Ill. App. 3d at 527. The dissenting justice disagreed, instead contending that the order of protection should be interpreted as a court order, which "is subject to its own rules of

construction." *Davit*, 366 Ill. App. 3d at 531 (Callum, J., dissenting). The order of protection at issue in *Davit* stated that the defendant " 'shall not enter or remain in the household of [*sic*] premises' " of his former spouse. *Davit*, 366 Ill. App. 3d at 523. The majority found this language to be ambiguous and applied the rule of lenity to construe the order to mean "that the order prohibited entry only into [the ex-wife's] house and did not prohibit defendant's presence upon [her] driveway or yard." *Davit*, 366 Ill. App. 3d at 529. As a result, the majority reversed the defendant's conviction for violating the order of protection. *Davit*, 366 Ill. App. 3d at 530.

¶ 22　　　　More recently, the Second District considered an order of protection with similar provisions as the one at issue here. The order prohibited the defendant from (1) being within 1,000 feet of the petitioner's residence or school and (2) entering or remaining at her school when she was present. *People v. Gabriel*, 2014 IL App (2d) 130507, ¶ 2. The appellate court found that these two provisions, taken together, were ambiguous as to whether the defendant could be at the school while the petitioner was not present. *Gabriel*, 2014 IL App (2d) 130507, ¶ 13. Though the *Gabriel* court noted the disagreement between the majority and dissent in *Davit* "on whether orders of protection are to be construed liberally or strictly," it ultimately found that the distinction between strict and liberal construction was immaterial where the trial court's interpretation of the order was erroneous under either construction. *Gabriel*, 2014 IL App (2d) 130507, ¶ 14.

¶ 23　　　　In the case at bar, the State concedes that we should review the order of protection *de novo* and that if the order is ambiguous, the principle of lenity should be applied to construe the order strictly in favor of the accused. However, the State maintains that the order in this case is not ambiguous.

¶ 24　　　　Taking all the provisions of the order of protection together, we hold that the order is ambiguous as to whether it prohibited defendant from being outside the residence while Lester

was not present. See *Davit*, 366 Ill. App. 3d at 527 (establishing that an order is ambiguous if its language could reasonably be interpreted differently). Like the nearly identical language in *Gabriel*, sections 2 and 3 of the order of protection are in conflict, generating confusion as to exactly what defendant was prohibited from doing. See *Gabriel*, 2014 IL App (2d) 130507, ¶ 13. Although section 2 states that "Respondent is ordered not to stay or be at the residence," the context for that language related to "Possession of Residence." Defendant does not dispute that he knew he should not "use or occupy" the residence, and he indeed had moved out of the residence. He was neither using nor occupying the property on February 22, 2024, so he was arguably in compliance with Section 2.

¶ 25 Section 3 first stated that defendant "shall not have any communication with Petitioner," "shall stay away from Petitioner at all times," and "shall stay at least 300 feet away from Petitioner at all times." The trial court then added the provision that "Respondent shall not be at or stay at [Lester's residence and "ANY AND ALL LOCATIONS" in Illinois] *while Petitioner is there*." (Emphasis added.) We presume that the court used the language "while Petitioner is there" for a reason. The State's position on appeal—that section 2 of the order unambiguously prohibited defendant from being outside the property, regardless of whether Lester was home—effectively reads this language from section 3 out of the order. Considering that defendant remained in a relationship with Holly, who still resided at the property, it is certainly plausible that the court intended to prohibit defendant from being near Lester's residence only when Lester was present. The record does not contain any transcripts from the proceedings concerning the order of protection to enlighten us further on the court's intent. Viewing the emergency order of protection in its entirety, we hold that it is unclear to a reasonable person whether defendant was prohibited from being outside the property at all times or only when Lester

was present.

¶ 26    In so holding, we note that orders of protection serve a very important role in protecting individuals from abuse and threat of harm. However, it is equally important for the parties to an order of protection to understand its contents and ramifications. Here, defendant testified that Armstrong, the officer serving him with the order of protection, did not read him any of the specific sections and it was his understanding that he could not be within 300 feet of Lester and "couldn't be at the house" or "inside the house" while Lester was there. Though Armstrong testified that he read to defendant the boxes that were marked on the order, he did not recall if he explained it in his own words. As discussed, the order itself is ambiguous, and thus, merely reading the boxes that were marked on the order would not provide defendant with clear notice as to whether he was prohibited from being near his partner's residence when Lester was away.

¶ 27    The State concedes that the rule of lenity would apply in the event we deem the emergency order or protection ambiguous. Because the order is ambiguous, we construe it to prohibit defendant from being outside of the property only when Lester was present. As a result, to convict defendant of violating the order of protection, the State was required to prove that defendant approached the property knowing that Lester was present. See *Davit*, 366 Ill. App. 3d at 525 (establishing that a violation of an order of protection is not a strict liability offense and the State must prove the defendant knowingly violated the order). Notably, the jury instructions did not completely identify the State's burden of proof. Nevertheless, even viewing the evidence in the light most favorable to the State, a rational trier of fact could not have found that defendant knew Lester was present. During trial, the State did not argue that defendant knew that Lester was present, insisting that Lester's presence was irrelevant. Defendant's uncontested testimony showed that Lester's car was not parked in front of the building when defendant arrived, leading him to

believe that Lester was not present at the residence. As shown in the body camera footage, Holly also believed Lester was not present. Appell testified that he could not recall if he could see where Lester was standing when Appell was in front of the apartment door talking to defendant. There was thus no evidence to suggest, let alone prove beyond a reasonable doubt, that defendant knew that Lester was present when he approached the residence. Accordingly, we reverse defendant's conviction for violating the emergency order of protection on February 22, 2024.

¶ 28 Defendant also asserts that his trial counsel was ineffective when she failed to file a certification for the waiver of court assessments pursuant to Illinois Supreme Court Rule 404(e) (eff. Sept. 1, 2023). However, because we reverse defendant's conviction, we need not reach this issue.

¶ 29 III. CONCLUSION

¶ 30 For the reasons stated, we reverse the trial court's judgment.

¶ 31 Reversed.